Betty EVANS, on her own behalf and on behalf of her minor son, David "Buddy" KUTCH, Jr.; Sharon Cross, on her own behalf and on behalf of her minor daughter, Laronsia Cross; Raymond Nealy, Sr.; and Lillian A. Wood, Appellants,

v.

STATE of Alaska, Appellee.

No. S–9313.

Supreme Court of Alaska.

Aug. 30, 2002.

Rehearing Denied Nov. 13, 2002.

Robert H. Wagstaff and Wm. Grant Callow, Anchorage, for Appellants.

Gary M. Guarino, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, and Ronald W. Lorensen and L. Merrill Lowden, Simpson, Tillinghast, Sorensen, Lorensen & Longenbaugh, Juneau, for Appellee.

Amy S. Gurton, Robertson, Monagle & Eastaugh, P.C., Juneau, for Amicus Curiae Alaska State Hospital and Nursing Home Association. Roger F. Holmes, Anchorage, for Amicus Curiae Alaska State Chamber of Commerce.

Before: FABE, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

## I. INTRODUCTION

This appeal is a challenge to the 1997 tort reform legislation enacted by the Alaska Legislature in chapter 26, SLA 1997. The plaintiffs, all injured parties contemplating tort actions, asked the superior court for a declaratory judgment that this legislation is void under the Alaska Constitution. However, the superior court granted summary judgment to the State and refused to grant the relief sought by the plaintiffs. We affirm the trial court's decision that the legislation is facially constitutional.

## II. FACTS AND PROCEEDINGS

In 1997 the Alaska Legislature enacted legislation including tort reform provisions, in chapter 26, SLA 1997. The legislation was later codified into various sections of the Alaska Statutes and became effective on August 7, 1997. It included many new tort law provisions, including caps on noneconomic and punitive damages,[1] a requirement that half of all punitive damages awards be paid into the state treasury,[2] a ten-year "statute of repose,"[3] a modified tolling procedure for the statute of limitations as applied to minors,[4] comparative allocation of fault between parties and non-parties,[5] a revised offer of judgment procedure,[6] and partial immunity for hospitals from vicarious liability for some physicians' actions.[7]

The appellants, all allegedly injured persons who have filed or plan to file tort actions, filed this action seeking a declaratory judgment that all of chapter 26, SLA 1997 is void under the Alaska Constitution. The case was assigned to Superior Court Judge Charles R. Pengilly. The plaintiffs and the State filed opposing motions for summary

1. See AS 09.17.010, .020; ch. 26, §§ 9–10, SLA 1997.

2. See AS 09.17.020(j); ch. 26, § 10, SLA 1997.

3. See AS 09.10.055; ch. 26, § 5, SLA 1997.

4. See AS 09.10.140; ch. 26, §§ 7–8, SLA 1997.

5. See AS 09.17.080; ch. 26, §§ 11–13, SLA 1997.

6. See AS 09.30.065; ch. 26, §§ 16–17, SLA 1997.

7. See AS 09.65.096; ch. 26, § 30, SLA 1997.

judgment. The Alaska State Chamber of Commerce and the Alaska Hospital Association filed amicus briefs in support of the legislation. The superior court heard oral argument on these motions, and subsequently granted the State's motion for summary judgment and denied the plaintiffs' motion in all respects, upholding all of chapter 26, SLA 1997. The plaintiffs appeal this decision.

### III. *STANDARD OF REVIEW*

 This appeal requires us to review a grant of summary judgment; this review is de novo.[8] We will affirm summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[9] When making this determination, we will draw all reasonable inferences in favor of the non-moving party.[10] This appeal raises constitutional issues, which are issues of law subject to de novo review.[11]

### IV. *DISCUSSION*

In this appeal, the plaintiffs challenge seven provisions within chapter 26, SLA 1997:(1) the cap on noneconomic and punitive damages under AS 09.17.010 and .020; (2) the requirement that half of all punitive damages awards be paid to the State under AS 09.17.020(j); (3) the comparative apportionment of damages under AS 09.17.080; (4) the revised offer of judgment procedure under AS 09.30.065; (5) the limitations tolling procedure under AS 09.10.070(a)(2) and .140; (6) the partial tort immunity for hospitals under AS 09.65.096; and (7) the "statute of repose" under AS 09.10.055.

In addition to the specific challenges above, the plaintiffs claim that the entire act is unconstitutional under the "one subject" rule of article II, section 13 of the Alaska Constitution. The plaintiffs also claim that, once all of these constitutional infirmities are exposed, nothing in chapter 26, SLA 1997 remains severable, and that therefore, the entire act must be struck as unconstitutional. These two final issues will be addressed in Part IV.H of this opinion.

Before these provisions are discussed in turn, we note that these are facial challenges. The plaintiffs do not complain of specific application of the challenged statutes to tort actions brought by the plaintiffs. Instead, the plaintiffs seek a declaratory judgment "in order that they may better determine how to proceed" with their contemplated tort actions. The result we reach in this opinion might be different if we were presented with challenges to the law as applied in a particular case. Therefore, our ruling is limited to the facial import of the challenged provisions of chapter 26, SLA 1997.

### A. *The Caps on Noneconomic and Punitive Damages Under AS 09.17.010 and .020 Are Facially Constitutional.*

Chapter 26, SLA 1997 modified AS 09.17.010 to place a cap on the amount of noneconomic damages that may be awarded in tort actions "for personal injury and wrongful death."[12] The new AS 09.17.010 lists specific claims for which noneconomic damages shall be recoverable and specifies financial limits for damage awards for each claim. Availability of noneconomic damages is first limited to "compensation for pain, suffering, inconvenience, physical impairment, disfigurement, loss of enjoyment of life, loss of consortium, and other nonpecuniary damage."[13] These damages are further limited in amount to $400,000 or $8,000 multiplied by the injured person's life expectancy in years, whichever is greater, for each single injury or death.[14] When the damages are

---

8. *See State v. Alaska Civil Liberties Union*, 978 P.2d 597, 603 (Alaska 1999).

9. *See Moore v. Allstate Ins. Co.*, 995 P.2d 231, 233 (Alaska 2000); Alaska Civil Rule 56(c).

10. *See id.*

11. *See Alaska Civil Liberties Union*, 978 P.2d at 603.

12. *See* ch. 26, § 9, SLA 1997. The 1997 legislation revised a previous $500,000 cap, created by the legislature in 1986. *See* former AS 09.17.010 (1986). We never addressed the constitutionality of the former $500,000 cap.

13. AS 09.17.010(a).

14. *See* AS 09.17.010(b).

awarded for "severe permanent physical impairment or severe disfigurement," the cap is extended to $1,000,000 or, in the alternative, $25,000 multiplied by the injured person's life expectancy in years, whichever is greater.[15]

Chapter 26, SLA 1997 also modified AS 09.17.020(f)-(h) [16] to limit the amount of punitive damages in most cases to three times compensatory damages, or $500,000, whichever is greater.[17] If the defendant knowingly caused the injuries for financial gain, the cap is expanded to four times compensatory damages, four times the amount of financial gain, or $7,000,000, whichever is greater.[18] A different cap applies when the action is against an employer to recover damages for an unlawful employment practice prohibited by AS 18.80.220; in that case the cap is $200,000 if the employer has fewer than 100 employees in Alaska, $300,000 for 100–200 employees, $400,000 for 200–500 employees, and $500,000 for 500+ employees.[19]

The plaintiffs claim that the caps on non-economic and punitive damages violate six provisions of the Alaska Constitution: (1) the right to a jury trial; (2) the right to equal protection; (3) the right to substantive due process; (4) the separation of powers; (5) the right of access to the courts; and (6) the ban on "special legislation." Each of these arguments will be addressed in turn.

**15.** AS 09.17.010(c).

**16.** *See* ch. 26, § 10, SLA 1997.

**17.** *See* AS 09.17.020(f).

**18.** *See* AS 09.17.020(g).

**19.** *See* AS 09.17.020(h).

**20.** In *Loomis Electronic Protection, Inc. v. Schaefer*, 549 P.2d 1341, 1343–45 (Alaska 1976), we interpreted this provision to reflect the law/equity distinction found in the Seventh Amendment to the United States Constitution, finding that suits seeking "compensatory and punitive damages" are suits at law giving rise to the right to a jury trial under the Alaska Constitution. In *Keyes v. Humana Hospital Alaska, Inc.*, 750 P.2d 343, 346–48 (Alaska 1988), we held that expert panels used in medical malpractice cases did not violate the right to a jury trial under the Alaska Constitution because the jury retained the power to weigh and assess all of the evidence presented to it, including the panel's conclusions.

### 1. The damages caps do not infringe on the right to a trial by jury.

■ The plaintiffs' first argument concerning the damages caps is that the caps constitute a violation of the right to trial by jury granted by article I, section 16 of the Alaska Constitution and the Seventh Amendment to the United States Constitution. The plaintiffs argue that the calculation of damages is the exclusive province of the jury—subject to the judicial power of remittitur—and that the legislature has unconstitutionally invaded this province by enacting the damages caps. The superior court rejected the plaintiffs' argument and held that the damages caps did not invade the province of the jury.

We have not previously examined the scope and extent of the right to a trial by jury under article I, section 16 of the Alaska Constitution.[20] However, the language of the Alaska Constitution's trial by jury provision mirrors the language of the Seventh Amendment to the United States Constitution,[21] and proposals to create a right to trial by jury with different language were rejected during the Alaska Constitutional Convention.[22]

We agree with the reasoning employed by the Third Circuit Court of Appeals, which interpreted the Seventh Amendment to the United States Constitution to allow damages

**21.** Article I, section 16 of the Alaska Constitution provides:

> In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law.

The Seventh Amendment to the United States Constitution provides:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law.

**22.** At the constitutional convention, there were proposals to extend the right to all suits in superior court, or to all civil suits. *See* 2 Proceedings of the Alaska Constitutional Convention 1351–52, 1355 (January 6, 1956). However, these proposals were not adopted.

caps. In *Davis v. Omitowoju,* the court held that a damages cap did not intrude on the jury's fact-finding function, because the cap was a "policy decision" applied after the jury's determination, and did not constitute a re-examination of the factual question of damages.[23]

Other state courts have similarly interpreted trial by jury provisions to allow damages caps. In *Pulliam v. Coastal Emergency Services of Richmond, Inc.,*[24] and *Etheridge v. Medical Center Hospitals,*[25] the Virginia Supreme Court drew a distinction between the jury's exclusive province of fact-finding, and the legislature's power to alter the law that applied to the jury's determination: "Once the jury has ascertained the facts and assessed the damages ... the constitutional mandate is satisfied, [and] it is the duty of the court to apply the law to the facts." [26] That is, the Virginia court held that the jury has the power to determine the plaintiff's damages, but the legislature may alter the

permissible recovery available under the law by placing a cap on the award available to the plaintiff.[27] Eight other courts have upheld damages caps using the same or similar reasoning.[28]

We agree with *Davis, Pulliam,* and the other decisions that have held that damages caps do not violate the constitutional right to a trial by jury.[29] The decision to place a cap on damages awarded is a policy choice and not a re-examination of the factual question of damages determined by the jury. Therefore, the damages caps under AS 09.17.010 and .020 do not violate article I, section 16 of the Alaska Constitution or the Seventh Amendment to the United States Constitution.[30]

### 2. *The damages caps do not constitute a denial of equal protection.*

■ The plaintiffs claim that the damages caps constitute a violation of equal protection

**23.** 883 F.2d 1155, 1159–65 (3d Cir.1989).

**24.** 257 Va. 1, 509 S.E.2d 307 (1999).

**25.** 237 Va. 87, 376 S.E.2d 525 (1989).

**26.** *Id.* at 529.

**27.** *See id.; Pulliam,* 509 S.E.2d at 312–15.

**28.** *Kirkland v. Blaine County Med. Ctr.,* 134 Idaho 464, 4 P.3d 1115, 1119–20 (2000) (upholding damages cap because, even though fact-finding is in the exclusive province of the jury, the court must apply the law, which is formulated by the legislature, to the facts found by the jury); *Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102, 116–18 (App.1992) (same); *Peters v. Saft,* 597 A.2d 50, 53–54 (Me.1991) (same; noting that a "drastic" damages cap might violate the right to a jury trial because it would effectively eliminate the remedy altogether); *English v. New England Med. Ctr., Inc.,* 405 Mass. 423, 541 N.E.2d 329, 331–32 (1989) (same); *Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 906–07 (Mo.1992) (same); *Wright v. Colleton County Sch. Dist.,* 301 S.C. 282, 391 S.E.2d 564, 569–70 (1990) (same); *Robinson v. Charleston Area Med. Ctr.,* 186 W.Va. 720, 414 S.E.2d 877, 887–88 (1991) (same); *Guzman v. St. Francis Hosp., Inc.,* 240 Wis.2d 559, 623 N.W.2d 776, 783–85 (App.2000) (same), *rev. denied,* 242 Wis.2d 543, 629 N.W.2d 783 (2001).

**29.** Our conclusion is also supported by the Supreme Court's recent decision in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674

(2001), in which the Court held that the de novo standard of review must be applied when appellate courts review the constitutionality of punitive damages awards. *See id.* at 436, 121 S.Ct. 1678. The Court noted that punitive damages awards are not findings of fact, and that appellate review of a trial court's determination that an award is consistent with due process does not implicate the Seventh Amendment. *See id.* at 437, 121 S.Ct. 1678.

**30.** We decline to follow those state courts that have interpreted analogous constitutional trial by jury provisions to prohibit damages caps. *See Moore v. Mobile Infirmary Ass'n,* 592 So.2d 156, 159–65 (Ala.1991) (holding that the calculation of damages is within the exclusive province of the jury, subject to remittitur only when the calculation is "flawed"; because a damages cap applies automatically and absolutely, with no consideration of the particular facts, and is not used to correct a "flawed" verdict, a damages cap is unconstitutional); *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251, 258–60 (1988) (same); *Lakin v. Senco Prods., Inc.,* 329 Or. 62, 987 P.2d 463, 469–75 (1999) (same); *Sofie v. Fibreboard Corp.,* 112 Wash.2d 636, 771 P.2d 711, 719–23 (1989) (same); *see also Smith v. Department of Ins.,* 507 So.2d 1080, 1088–89 (Fla.1987) (without analysis, holding that a damages cap violates the right to trial by jury); *State ex rel. Ohio Academy of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062, 1090–91 (1999) (holding that calculation of damages is within the exclusive province of the jury).

because two classes of successful tort plaintiffs are treated differently: (1) those who receive "full" compensation, and (2) those who do not, because "full" compensation would be in excess of the caps.

 To analyze the right to equal protection under article I, section 1 of the Alaska Constitution, we apply a three-part "sliding scale" test:

[W]e first determine the importance of the individual interest impaired by the challenged enactment. We then examine the importance of the state interest underlying the enactment, that is, the purpose of the enactment. Depending upon the importance of the individual interest, the equal protection clause requires that the state's interest fall somewhere on a continuum from mere legitimacy to a compelling interest. Finally, we examine the nexus between the state interest and the state's means of furthering that interest. Again depending upon the importance of the individual interest, the equal protection clause requires that the nexus fall somewhere on a continuum from substantial relationship to least restrictive means.[31]

 Under this test we must weigh the relative importance of the plaintiff's interest and the State's interest. If the plaintiff's interest is not very important, the State need only show that its objectives were "legitimate"; if the plaintiff's interest is important, the State must show a "compelling" state interest. If the State demonstrates a sufficiently strong interest, it must also show the required "nexus" or "fit" between its regulations and its objectives. Depending on the importance of the plaintiff's interest, the State may have to show a different degree of "fit" along a continuum of possibilities. If the plaintiff's interest is not very important,

this fit must be merely "a substantial relationship between means and ends"; however, if the plaintiff's interest is very important, the regulation must be the least restrictive means available to achieve the objective.[32] We will apply each of the three steps of this analysis in turn.

a. *The plaintiffs' interests in unlimited damages are economic interests.*

The plaintiffs characterize their interests in unlimited damages in two different ways. The plaintiffs first claim that they have a "right to full redress"—the right to have their damages fully determined by a jury, and that this right is impaired by artificial damages caps that impair the jury's ability to do this. Secondly, the plaintiffs claim that the damages caps infringe on the rights of rural Alaskans—because the damages caps are uniform throughout the state and $1 "does not go as far [in rural Alaska] as in urban Alaska."

As for the first characterization, the plaintiffs claim that their interest in unlimited damages is related to their interest in access to the courts, and is therefore an important interest requiring "strict scrutiny," placing a greater burden on the State to justify its regulation.

The right of access to the courts is an important interest requiring enhanced scrutiny; however, that right is impaired only by state action that actually limits or blocks access to the courts.[33] The damages caps at issue here do not actually limit access to the courts; rather, they simply limit a plaintiff's recovery in civil court.

The plaintiffs' interests in unlimited damages are merely economic, as the superior

---

31. *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 993 P.2d 1018, 1023 (Alaska 1999) (quoting *State, Dep'ts of Transp. & Labor v. Enserch Alaska Constr., Inc.,* 787 P.2d 624, 631–32 (Alaska 1989)).

32. See *Gilmore v. Alaska Workers' Compensation Bd.,* 882 P.2d 922, 926 (Alaska 1994).

33. See *Patrick v. Lynden Transport, Inc.,* 765 P.2d 1375, 1379 (Alaska 1988) (holding that statute requiring security bond for nonresident plaintiffs

in civil court "restricts access to Alaska courts" and violates equal protection); *Wilson v. Municipality of Anchorage,* 669 P.2d 569, 572 (Alaska 1983) (holding that statute blocking recovery against government tortfeasors did not infringe right of access to courts because plaintiffs could still recover against private tortfeasors); *Bush v. Reid,* 516 P.2d 1215, 1220–21 (Alaska 1973) (holding that statute directly barring parolees' access to civil courts infringed right of access to courts).

court correctly determined. As we held in *Reid v. Williams*[34] and *Gilmore v. Alaska Workers' Compensation Board*,[35] restrictions on the types or amounts of damages that a plaintiff can pursue in court only infringe upon economic interests. Such economic interests do not count as "important" interests under our equal protection analysis.[36]

### b. The State's "tort reform" objectives are legitimate.

The next step in our equal protection analysis focuses on the adequacy of the State's objectives underlying the regulation. Since we have determined that the plaintiffs' interests in unlimited damages are merely economic, the State's objectives need only be "legitimate"—not "compelling"—to justify the State's action.[37] The superior court held that the legislature's stated goals underlying the damages caps are "plainly legitimate."

The plaintiffs claim that the State's objectives in enacting the damages caps were not legitimate, because chapter 26, SLA 1997 as a whole was enacted to deal with problems that do not actually exist: a dramatic increase in personal injury and malpractice cases, "runaway juries," and out-of-control damages awards.

The legislative goals underlying the damages caps, as well as the rest of chapter 26, SLA 1997, are explicitly stated in chapter 26, section 1, SLA 1997. Specifically, section 1 states that the legislation was intended to (1) discourage frivolous litigation and decrease the costs of litigation;[38] (2) stop "excessive" punitive damages awards in order to foster a "positive" business environment;[39] (3) control the increase of liability insurance rates;[40] (4) encourage "self-reliance and independence by underscoring the need for personal responsibility";[41] and (5) reduce the cost of malpractice insurance for professionals.[42]

In our past decisions, we have accepted as legitimate very similar legislative goals. In *McConkey v. Hart*, we considered the constitutionality of a statute that limited the accrual of prejudgment interest for victims of particular torts, including the medical malpractice plaintiff in that case.[43] The purposes of the statute in *McConkey* were very similar to those expressed by the legislature here, and we noted the legitimacy of such "tort reform" objectives: "Reducing health care costs and encouraging the provision of health care services are legitimate goals which can reasonably be thought to be furthered by lowering the amount of medical malpractice judgments."[44] Similarly, in *Reid v. Williams*, we noted that the stated purpose of "alleviat[ing] the medical malpractice insurance crisis" was a legitimate legislative goal.[45]

We decline the plaintiffs' invitation to second-guess the legislature's factual findings. After examining various evidence and testimony, the legislature found that there were problems with tort litigation that needed to be solved, including frivolous litigation, excessive damages awards, and increased costs for malpractice and other liability insurance.[46] The plaintiffs, pointing to other contrary evidence, ask us to independently

34. 964 P.2d 453, 458 (Alaska 1998) (holding that statute limiting medical malpractice damages affects "economic" interests and justifies only "minimal" equal protection scrutiny).

35. 882 P.2d 922, 926–27 (Alaska 1994) (holding that statute limiting workers' compensation infringed only economic interest which, like the interest in unemployment benefits, is "only entitled to review at the low end of the scale").

36. Under the plaintiffs' second characterization of their interest in unlimited damages—as an interest in uniform recovery statewide—the plaintiffs themselves concede that their interest is economic and warrants only minimal scrutiny.

37. *Reid*, 964 P.2d at 458.

38. Ch. 26, § 1(1), SLA 1997.

39. Ch. 26, § 1(2), SLA 1997.

40. Ch. 26, § 1(3), SLA 1997.

41. Ch. 26, § 1(4), SLA 1997.

42. Ch. 26, § 1(5), SLA 1997.

43. 930 P.2d 402 (Alaska 1996).

44. *Id.* at 408.

45. 964 P.2d 453, 457 (Alaska 1998).

46. *See* ch. 26, § 1(1–5), SLA 1997.

review this conclusion and find that the evidence instead showed that these problems did not really exist. The plaintiffs ask us to delve into questions of policy formulation that are best left to the legislature. As we have noted previously, "[i]t is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people."[47]

### c. The nexus between the legislative objectives and the damages caps is adequate.

Finally, we must evaluate the nexus or "fit" between the legislature's goals and the means employed to achieve those goals. Because we have already established that the plaintiffs' interests are economic and are therefore at the "low end" of the "sliding scale," the fit required here is minimal and there must only be a "substantial relationship" between the legislative objectives and the damages caps.[48] The superior court found that the nexus was adequate, noting that "the causal connection between a limitation on the size of awards for noneconomic damages and lower insurance premiums hardly requires elaboration."

The plaintiffs contend that there is no "substantial relationship," and they make essentially two arguments to support this conclusion. First, they claim that there is no evidence of any connection between the damages caps and the legislative goals underlying chapter 26, SLA 1997. The plaintiffs claim that "the record is devoid of any evidence" that the damages caps would have a positive effect on insurance rates and frivolous litigation.

Second, the plaintiffs claim that the uniformity of the damages caps across the state has no substantial relationship to the legislature's goals. The plaintiffs claim that the caps discriminate against rural Alaskans because those Alaskans should receive adjusted damages in light of their higher cost of living. The plaintiffs argue that the failure to adjust for cost of living has no "substantial relationship" to the legislature's objectives.

The record indicates that the legislature considered at least some evidence tending to show that damages caps, as well as the other provisions of chapter 26, SLA 1997, could have a positive effect on the legislature's objectives. For example, some industry representatives testified that chapter 26, SLA 1997 would "improv[e] the business climate" by lowering business costs.[49] Several insurance company representatives claimed that liability insurance rates would go down if a damages cap were to be enacted; one representative included statistics that tended to show that in California, where similar tort reforms have been enacted, insurance premiums have in fact gone down.[50] Small business owners and representatives of health care organizations testified, respectively, that chapter 26, SLA 1997 would have a positive impact on liability insurance rates[51] and malpractice insurance rates.[52] Finally, evidence was submitted supporting the conclusion that the availability of high punitive damages awards tended to lengthen litigation in civil suits generally.[53]

The legislature was also presented with contrasting testimony—notably, from the Governor's Advisory Task Force on Civil Justice Reform. The Task Force Report concluded that damages caps would not have a clear effect on frivolous litigation or insurance rates. The legislature apparently weighed the competing evidence and decided

**47.** *Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974); *see also Griswold v. City of Homer*, 925 P.2d 1015, 1019 (Alaska 1996) ("We have repeatedly held that it is the role of elected representatives rather than the courts to decide whether a particular statute or ordinance is a wise one.").

**48.** *Gilmore v. Alaska Workers' Compensation Bd.*, 882 P.2d 922, 926 (Alaska 1994).

**49.** *See* ch. 26, § 1(2), SLA 1997.

**50.** *See* ch. 26, § 1(3), SLA 1997.

**51.** *See id.*

**52.** *See* ch. 26, § 1(5), SLA 1997.

**53.** *See* ch. 26, § 1(1), SLA 1997.

that the evidence in favor of creating the damages caps justified enacting the caps.

The plaintiffs allege that much of the evidence presented to the legislature was false or misleading and they invite us to examine contrasting evidence and impeachment evidence, arguing that the legislature should not be allowed "to do whatever it wishes regardless of the factual basis for legislative action." However, that weighing of the evidence is a task that is properly left to the legislature. The "substantial relationship" requirement was met in this case.

We must also briefly address the plaintiffs' second argument—that the uniformity of the caps across the state is unconstitutional, because that uniformity is not fairly and substantially related to the legislative goals of tort reform. The plaintiffs did not provide any authority to support their argument. However, at least one other court has refused to find an equal protection violation merely because a law has a different economic impact on urban and rural residents of a state.[54] There is also no violation of equal protection merely because the damages caps do not provide for cost of living adjustments.

### 3. The damages caps do not infringe on substantive due process rights.

■ The plaintiffs also argue that the damages caps violate their substantive due process rights. However, this argument fails because we have already found that the damages caps do not violate equal protection. As recognized by the superior court, our substantive due process test is a more deferential version of the equal protection test already discussed. We explained in *State v. Niedermeyer* that "[s]ubstantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose."[55] Our equal protection test is similar but less deferential: because the plaintiffs' interests are economic, the State had to show that the regulation had a

"fair and substantial" relationship to a legitimate state objective. Because we found that there was a fair and substantial relationship, there is necessarily a reasonable relationship as well. Therefore, the damages caps do not deny substantive due process.

### 4. The damages caps do not violate the separation of powers.

■ The plaintiffs also claim that the damages caps violate the principle of the separation of governmental powers, as that principle is defined by article IV, section 1 of the Alaska Constitution. The plaintiffs' argument is that the power of remittitur—the power to reduce damages by altering a jury's findings of fact—is an exclusive power of the judiciary that cannot be usurped by the legislature. The damages caps allegedly usurp this power by remitting damages automatically to fixed levels. The superior court rejected this argument, and stated that "[t]his claim relies upon an even weaker and more outlandish assumption than the others that precede it: that, for some reason, damages fall within the exclusive province of the court system." The superior court noted that the legislature's action was better characterized as the "modification and limitation of causes of action," which is "an activity that falls squarely within the legislature's competence, and one that is properly reserved for members of the voting public speaking through their legislators."

The damages caps cannot violate the separation of powers, because the caps do not constitute a form of remittitur. We agree with the reasoning of the federal court that decided *Franklin v. Mazda Motor Corp.*, interpreting Maryland law.[56] In *Franklin*, the court considered the constitutionality of a noneconomic damages cap under the Maryland Constitution. The court held that the damages cap did not violate the separation of powers, because the power of the legislature to modify or abolish the common law "neces-

---

**54.** *Massachusetts Gen. Hosp. v. Weiner*, 569 F.2d 1156, 1161 (1st Cir.1978) (holding no denial of equal protection where, for purposes of setting medicare rates, there is uniform treatment of urban teaching hospitals and rural hospitals).

**55.** 14 P.3d 264, 267 (Alaska 2000) (quoting *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough*, 527 P.2d 447, 452 (Alaska 1974)).

**56.** 704 F.Supp. 1325 (D.Md.1989).

sarily includes the power to set reasonable limits on recoverable damages in causes of action the legislature chooses to recognize."[57] At least six other courts have reached similar conclusions.[58] We agree with these authorities, and decline to follow other authorities that stand for the contrary proposition,[59] because the legislature does in fact have the power to alter common law remedies,[60] and that is what the legislature has done in enacting the damages caps. This alteration is not remittitur because it is a general alteration applied to all cases, and is not case- and fact-specific like remittitur.

5. *The damages caps do not infringe on the right of access to the courts.*

 The plaintiffs also argue that the damages caps infringe upon their constitutional right of meaningful access to the courts, as guaranteed by the due process clause in article I, section 7 of the Alaska Constitution. The plaintiffs' argument here

is similar to arguments made earlier in the equal protection and substantive due process contexts. Their argument is that the right of meaningful access includes a "right to an adequate remedy," and that the damages caps infringe upon this right because, for some plaintiffs, adequate compensation would be an amount in excess of the caps. The superior court rejected this argument.

In *Bush v. Reid*, we recognized a constitutional "right of access" under the due process clause in article I, section 7 of the Alaska Constitution.[61] In *In re K.A.H.*, we stated that the right of access is infringed when there are "direct impediments to court access."[62] We held in that case that Alaska Rule of Professional Conduct 1.8(e), which prohibits lawyers from loaning money to their clients for living expenses, does not infringe on the right of access because this rule does nothing to impede actual access to the courts: "nothing in Rule 1.8(e) expressly prohibits plaintiffs from filing suit or re-

57. *Id.* at 1336.

58. *See Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 945–46 (6th Cir.2000) (holding that federal Title VII damages cap did not violate separation of powers because Congress created the remedies under Title VII, and may therefore limit them as well), *rev'd on other grounds*, 532 U.S. 843, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001); *Kirkland v. Blaine County Med. Ctr.*, 134 Idaho 464, 4 P.3d 1115, 1121–22 (2000) (holding that noneconomic damages cap did not violate separation of powers because Idaho Constitution grants the legislature the power to "modify or abolish common law causes of action"); *Edmonds v. Murphy*, 83 Md.App. 133, 573 A.2d 853, 861 (1990) (holding that noneconomic tort damages cap did not violate separation of powers), *aff'd sub nom., Murphy v. Edmonds*, 325 Md. 342, 601 A.2d 102 (1992); *Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*, 257 Va. 1, 509 S.E.2d 307, 319 (1999) (holding that medical malpractice damages cap did not violate separation of powers, because under Virginia law the legislature "has the power to provide, modify, or repeal a remedy"); *Verba v. Ghaphery*, 210 W.Va. 30, 552 S.E.2d 406, 411, (2001) (holding that medical malpractice damages cap did not violate separation of powers because, under West Virginia law, the legislature has the power to alter the common law, and damages cap is mere limitation of common law remedies); *Guzman v. St. Francis Hosp., Inc.*, 240 Wis.2d 559, 623 N.W.2d 776, 785–86 (App.2000) (holding that noneconomic damages cap did not violate separation of powers because cap did not interfere with judi-

cial power of remittitur), *rev. denied*, 242 Wis.2d 543, 629 N.W.2d 783 (2001).

59. *See Best v. Taylor Mach. Works*, 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1080 (1997) (holding that statutory cap on noneconomic damages was unconstitutional, in part because cap infringed on judicial power of remittitur); *Lucas v. United States*, 757 S.W.2d 687, 691 (Tex.1988) (holding that statutory cap on medical malpractice damages was unconstitutional under "open courts" provision of Texas Constitution and noting in dicta that cap might also violate separation of powers); *Williams v. State*, 707 S.W.2d 40, 45–46 (Tex.Crim.App.1986) (holding that statute imposing requirements for remittitur of bail bond forfeiture was unconstitutional as legislative intrusion on "the judiciary['s] power over remittiturs of bond forfeitures"); *Sofie v. Fibreboard Corp.*, 112 Wash.2d 636, 771 P.2d 711, 721 (1989) (holding statutory cap on noneconomic damages unconstitutional, in part because cap infringed on judicial power of remittitur).

60. *See Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995) (implicitly holding that, "in the absence of a statute directing a contrary rule," courts were empowered to interpret the common law); *Surina v. Buckalew*, 629 P.2d 969, 973 (Alaska 1981) (noting that this court has the power "to explicate the common law ... unless and until the Alaska legislature acts to modify it").

61. 516 P.2d 1215, 1217–20 (Alaska 1973).

62. 967 P.2d 91, 95 (Alaska 1998).

quires plaintiffs to pay for court access." [63] And in *Peter v. Progressive Corp.*,[64] we considered whether the imposition of fees to retain a master infringes on the right of access; we stated that an imposition of fees may violate the right of access if the fees are "prohibitively high," but that reasonable fees will not infringe on the right of access.[65]

The damages caps are not like the restraints considered in *K.A.H.* and *Peter* because the caps do not impede actual access to the courts. Moreover, the damages caps do not violate the right of access because they are not so drastic so as to eliminate the tort remedies that they modify.[66] Therefore, the damages caps do not violate the right of access to the courts.

### 6. The damages caps do not violate the ban on "special legislation."

■ The plaintiffs also claim that the damages caps violate the ban on "special legislation" under article II, section 19 of the Alaska Constitution. Article II, section 19 states that "[t]he legislature shall pass no local or special act if a general act can be made applicable." The plaintiffs claim that the damages cap constitutes a prohibited "special act."

■ The plaintiffs' contention fails, because our test for whether a provision violates the "ban on special legislation" is identical to the equal protection test already discussed.[67] That is, "special legislation" is constitutional as long as it bears a "fair and substantial relationship" to legitimate state objectives.[68] We have already held that a fair and substantial relationship exists.

### B. The Provision Requiring Payment of Half of a Punitive Damages Award to the State, AS 09.17.020(j), Is Facially Constitutional.

Under AS 09.17.020(j), successful plaintiffs who receive any type of punitive damages must pay half of that award to the state treasury.[69]

The plaintiffs challenge AS 09.17.020(j) under three different constitutional theories: (1) substantive due process, (2) the takings clause, and (3) the right to a jury trial. Each of these theories will be discussed in turn.

### 1. Alaska Statute 09.17.020(j) does not constitute a violation of substantive due process rights.

■ The plaintiffs argue that the provision requiring payment of half of a punitive damages award to the State violates substantive due process. Arguing that "cases will occur in which the State's conduct would make it unjust for it to receive half of the punitive damages," plaintiffs proffer the following:

> The state is a defendant along with several private parties. All defendants act in a manner which meets the appropriate legal standard for an award of punitive damages. Despite the state's florid and blameworthy behavior, it benefits from the

---

63. *Id.*

64. 986 P.2d 865 (Alaska 1999).

65. *Id.* at 872–73.

66. *See Peters v. Saft*, 597 A.2d 50, 53–54 (Me. 1991) (declining to find a violation of the right of access because damages cap was not so drastic so as to eliminate tort remedies); *Hale v. Port of Portland*, 308 Or. 508, 523–24, 783 P.2d 506, 514–15 (1989) (same).

We decline to follow those jurisdictions that have held that damages caps violate the right of access merely because they have some partial effect on the "right of redress." *See Smith v. Department of Ins.*, 507 So.2d 1080, 1088–89 (Fla.1987) (holding that a damages cap violated the right of access under the Florida Constitution, and noting that, "if the legislature may

constitutionally cap recovery at $450,000, there is no discernible reason why it could not cap the recovery at some other figure, perhaps ... even $1."); *Lucas v. United States*, 757 S.W.2d 687, 691–92 (Tex.1988) (holding that damages caps violate plaintiffs' right to redress even though there was no "total abolition of the right of access" under the Texas Constitution).

67. *See Baxley v. State*, 958 P.2d 422, 430 (Alaska 1998).

68. *Id.*

69. AS 09.17.020(j) provides: "If a person receives an award of punitive damages, the court shall require that 50 percent of the award be deposited into the general fund of the state." AS 09.17.020(j) was added to AS 09.17.020 by chapter 26, § 10, SLA 1997.

wrongdoings of its co-tortfeasors to the extent of 50% of the punitive damages award.

The superior court held that AS 09.17.020(j) does not violate substantive due process rights.

We have held that "[s]ubstantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose." [70] Punitive damages are assessed as a deterrent to prevent future harm to the public, and setting aside a portion of the damages collected for the public's use is reasonably related to the deterrence goal.[71]

Nevertheless, the plaintiffs claim that it is "unjust" that the practical effect of AS 09.17.020(j) is to cut in half all punitive damages awards assessed against the State, since in all such cases the State will get half of the award back via AS 09.17.020(j). However, the effect of AS 09.17.020(j) is consistent with the rule that "punitive damages may not be awarded against governmental entities [including the State] in the absence of explicit statutory authorization." [72] Since punitive damages can only be awarded against the State in specific situations authorized by stat-

ute, the legislature may further limit punitive damages awards through another statute, AS 09.17.020(j).

> 2. *Alaska Statute 09.17.020(j) does not effect a taking without just compensation under the United States and Alaska Constitutions.*

 The plaintiffs also argue that AS 09.17.020(j) violates the federal and Alaska Takings Clauses. The plaintiffs claim that a punitive damages judgment is a property interest that is subject to the Takings Clause, and cannot be subject to a "forced contribution."

Alaska Statute 09.17.020(j) does not effect a taking unless the statute affects a property interest in punitive damages that has already vested. If AS 09.17.020(j) is construed as a cap on punitive damages, limiting them *before* they are awarded to successful plaintiffs, no constitutional problem exists. This construction of AS 09.17.020(j) is consistent with the legislature's power to limit or abolish punitive damages,[73] as well as with decisions from other courts that have considered the issue.[74] So construed, AS 09.17.020(j) does not effect an unconstitutional taking.

---

**70.** *State v. Niedermeyer,* 14 P.3d 264, 267 (Alaska 2000) (quoting *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974)).

**71.** We decline to follow the only authority cited by the plaintiffs, *McBride v. General Motors Corp.,* 737 F.Supp. 1563, 1579 (M.D.Ga.1990) (implying that a punitive damages forfeiture provision violated due process because there was no legitimate governmental purpose "for a state to involve itself in the area of civil damage litigation between private parties wherein punitive damages are a legitimate item of recovery, where the State, through the legislative process, preempts for itself a share of the award").

**72.** *Alaska Hous. Fin. Corp. v. Salvucci,* 950 P.2d 1116, 1123 (Alaska 1997).

**73.** *See Meech v. Hillhaven West, Inc.,* 238 Mont. 21, 776 P.2d 488, 504 (1989) (noting that the legislature has "plenary power ... in determining the availability of punitive damages"); *see also* AS 09.17.020 (limiting punitive damages to "outrageous" conduct or conduct involving "reckless indifference," and requiring a "separate proceeding" to determine the issue of punitive damages).

**74.** *Gordon v. State,* 585 So.2d 1033, 1035 (Fla. App.1991), *aff'd,* 608 So.2d 800 (Fla.1992) (holding that punitive damages forfeiture provision was not a taking because statute simply limited punitive damages, which is within the legislature's power, because punitive damages are "based entirely upon considerations of public policy"); *see also Mack Trucks, Inc. v. Conkle,* 263 Ga. 539, 436 S.E.2d 635, 639 (1993) (holding that punitive damages forfeiture provision was not a taking because potentially successful plaintiffs can have no vested property interest in punitive damages awards); *Shepherd Components, Inc. v. Brice Petrides–Donohue & Assocs., Inc.,* 473 N.W.2d 612, 619 (Iowa 1991) (same).

Because we interpret AS 09.17.020(j) to limit punitive damages before the award is made to successful plaintiffs, a case cited by the plaintiffs, *Kirk v. Denver Publ'g Co.,* 818 P.2d 262 (Colo. 1991), is distinguishable. In *Kirk,* the Colorado Supreme Court held that a punitive damages forfeiture provision was a taking because, under the court's interpretation, the statute applied *after* a final judgment was entered in the plaintiff's case. *See id.* at 272–73. Therefore, in *Kirk* the property interest in the punitive damages award vested *before* the forfeiture was taken by the state.

### 3. *Alaska Statute 09.17.020(j) does not violate the right to a trial by jury.*

 The plaintiffs also argue that AS 09.17.020(j) violates the right to a trial by jury under article 1, section 16 of the Alaska Constitution. The plaintiffs simply claim that the forfeiture provision, like the damages caps discussed earlier, unconstitutionally interferes with the jury's calculation of damages, a matter within the exclusive province of the jury.

This issue is resolved by our earlier conclusion that the damages caps under AS 09.17.010 and .020 do not violate the right to a trial by jury. Like those statutes, AS 09.17.020(j) limits punitive damages; as we held above, a policy-based statutory limitation on damages does not violate the right to a jury trial because it does not constitute a re-examination of the factual issue of damages.

### C. *The Comparative Apportionment of Damages Provision, AS 09.17.080, Is Facially Constitutional.*

Alaska Statute 09.17.080 is a comparative negligence statute that requires the finder of fact to assign a percentage share of responsibility for damages to each responsible party and non-party, and mandates that liability for damages must be apportioned between the responsible parties in accordance with their percentage of responsibility. Specifically, AS 09.17.080(a) requires the fact-finder to assign fault percentages to all parties to the suit, as well as to non-parties released from liability or "responsible for the damages." However, potentially responsible non-parties are not included within the apportionment of fault if the parties had a "sufficient opportunity" to join them but "chose not to" do so.[75] Under AS 09.17.080(c) and (d), the court must then determine each party's equitable share of the damages and enter judgment in accordance with that party's percentage of fault. The statute provides:

(c) The court shall determine the award of damages to each claimant in accordance with the findings and enter judgment against each party liable. The court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault as determined under (a) of this section. . . .

(d) The court shall enter judgment against each party liable on the basis of several liability in accordance with that party's percentage of fault.

No judgment is entered against non-parties; the allocation is used only as "a measure for accurately determining the percentages of fault of a named party."[76] Chapter 26, SLA 1997 added the requirement that fault be assigned to all non-parties "responsible for the damages."[77]

The plaintiffs challenge the allocation of fault to non-parties on two grounds: They claim that (1) it is a violation of due process because it is void for vagueness, and (2) it violates the plaintiffs' substantive due process rights. These arguments will be considered in turn.

### 1. *The allocation of fault to non-parties provision is not void for vagueness.*

We have recognized that a law is "void for vagueness" and violates due process when it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application."[78]

 The plaintiffs claim that AS 09.17.080(a) contains ambiguities that render it unconstitutionally vague. Each of these alleged ambiguities will be separately discussed in turn.

First, the plaintiffs claim that the statute requires that the fact-finder assign a fault percentage to every person that is alleged to be responsible for the damages. The plain-

---

75. *See* AS 09.17.080(a)(2).

76. AS 09.17.080(c).

77. *See* ch. 26, §§ 11–13, SLA 1997.

78. *Halliburton Energy Servs. v. State, Dep't of Labor*, 2 P.3d 41, 51 (Alaska 2000) (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

tiffs imply that there is an ambiguity because the language of the statute seems to require that no such person may be assigned a percentage of zero.

■ We reject this argument. The language of AS 09.17.080(a) does not state or imply that a percentage of zero cannot be assigned.[79] The plaintiffs do not provide any legislative history to counter the plain and unambiguous language of AS 09.17.080(a), which does not preclude a percentage of zero from being assigned.[80]

The other ambiguities claimed by the plaintiffs arise from the exception in AS 09.17.080(a)(2) that excludes some non-parties from the allocation of fault. As the superior court noted, the general rule, or "presumption," established by the statute is that all parties and non-parties "responsible for the damages" may be assigned a fault percentage. However, there are exceptions to that general rule: fault may not be allocated to any non-party that (1) is identified as "potentially responsible," (2) is not protected by the statute of repose, and (3) is a person or entity that the parties had a "sufficient opportunity" to join, but "chose not to."

> [T]he court ... shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating ... the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages, unless
>
> [1] the person was identified as a potentially responsible person,
>
> [2] the person is not a person protected from a civil action under AS 09.10.055, and

[3] the parties had a sufficient opportunity to join that person in the action but chose not to.[81]

The State, while urging us to affirm this "common sense" interpretation of the statute, also observes that, under the statute, a non-party can *only* be included in the allocation of fault if (1) the defendant identifies the non-party as someone who the defendant will argue is at fault, and (2) the defendant shows that the person could not be joined. This is also correct. In order to include a non-party in the fault allocation, a defendant must identify the non-party as someone who the defendant will argue is at fault, because otherwise that non-party cannot be a "person responsible for the damages" under the general rule of AS 09.17.080(a)(2). And, even if the defendant argues that a non-party was at fault, that non-party *cannot* be included in the allocation of fault if there was a "sufficient opportunity" to join that non-party, because a "sufficient opportunity" to join triggers the exception in AS 09.17.080(a)(2) defining non-parties that cannot be assigned an allocation of fault.[82] The statute states that there is a "sufficient opportunity" to join when the non-party is "(A) within the jurisdiction of the court; (B) not precluded from being joined by law or court rule; and (C) reasonably locatable."[83] Thus, as the State correctly maintains:

> [A]s finally enacted ... [AS 09.17.080] allows the allocation of fault to a non-party only if certain conditions are met. The defendant first has to identify the person as someone the defendant will argue is at fault. While no method of identification is specified, the procedures in the Alaska Rules of Civil Procedure will govern this

---

**79.** AS 09.17.080(a) provides:

> [T]he court ... shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating ... the percentage of the total fault that is allocated to each claimant, defendant, third-party defendant, person who has been released from liability, or other person responsible for the damages....

**80.** If the language of a statute is plain and unambiguous, we will follow this meaning unless strong legislative history is presented: "the plainer the language of a statute, the more con-

vincing contrary legislative history must be to interpret the statute in a contrary manner." *In re Johnstone*, 2 P.3d 1226, 1231 (Alaska 2000) (quoting *Ganz v. Alaska Airlines, Inc.*, 963 P.2d 1015, 1019 (Alaska 1998)).

**81.** AS 09.17.080(a) (numeration added).

**82.** The exception also requires that the person must not be "protected from a civil action under AS 09.10.055," the statute of repose. AS 09.17.080(a)(2).

**83.** AS 09.17.080(a)(2).

identification. Next, the defendant will have to show that the person could not be added as a third-party defendant either because that person is outside the jurisdiction of the court or because by law or court rule the person cannot be named as a party. Thus, a defendant who wishes to allocate fault to a person must add the person as a party if the defendant is legally able to do so.[84]

(Citations omitted.)

The plaintiffs claim that the first and third components of the exception in AS 09.17.080(a)(2) are ambiguous. First, the plaintiffs claim that the statute does not define sufficiently the term "potentially responsible person." The plaintiffs claim that this term is ambiguous because it is unclear who is responsible for identifying potentially responsible persons, what the standard of proof is, or what the procedure should be for such an identification.

The plaintiffs also claim that the third component of the exception is ambiguous. The plaintiffs impliedly argue that it is possible that a non-party could be identified as a potentially responsible party without the defendant's knowledge—and that therefore this third condition may not apply to that defendant because the defendant did not have the knowledge required to "choose" not to join the non-party. The plaintiffs also claim that the exception may create an ambiguous duty to try to ascertain potentially responsible persons, and that the phrase "sufficient opportunity to join" is not clear.

There is no unconstitutional ambiguity in the exception contained in AS 09.17.080(a)(2). It is true that AS 09.17.080(a)(2) does not define the term "potentially responsible person." However, this does not create an unconstitutional ambiguity. The identification of "potentially responsible persons" can be made by any party and will be managed by the trial court. Our rule-making process will provide further guidance if such guidance is needed.

The third component of the exception, including the phrase "sufficient opportunity to join," is also not unconstitutionally ambiguous. The exception does not implicitly or explicitly create any duties—it simply creates an exception to the general rule that all responsible non-parties will be assigned a fault percentage.

Our conclusion that AS 09.17.080(a) does not contain unconstitutional ambiguities is supported by our prior decisions in *Lazy Mountain Land Club v. Matanuska–Susitna Borough Board of Adjustment & Appeals*,[85] and *Williams v. State, Department of Revenue*.[86] In *Lazy Mountain*, we stated that there are "three principal considerations in determining whether a statute is unconstitutionally vague": (1) whether the statute operates to inhibit the exercise of First Amendment rights, (2) whether the statute gives adequate notice of what conduct is prohibited, and (3) whether there has been a history or a strong likelihood of uneven application.[87] In *Williams*, a workers' compensation claimant was denied benefits and claimed that the governing statute defining "injury" was unconstitutionally vague.[88] We noted in

---

84. Because we accept the State's interpretation of AS 09.17.080, we reject that plaintiffs' argument that a reasonable interpretation of the language of AS 09.17.080(a) is actually contrary to its "intended purpose," making it unconstitutionally vague. Without citation to any legislative history or other evidence, the plaintiffs claim that the "apparent intention" of the statute is to require that non-parties receive an allocation of fault *if* the exception in AS 09.17.080(a)(2) applies. However, as already noted, the unambiguous language of the statute indicates that non-parties will *not* receive an allocation of fault if the three conditions are met.

We reject this vagueness challenge. The plaintiffs do not support their interpretation of the "apparent intention" of the statute with any leg-

islative history, or any evidence or argument, and the unambiguous language of the statute does not support their interpretation.

85. 904 P.2d 373 (Alaska 1995).

86. 895 P.2d 99 (Alaska 1995).

87. 904 P.2d at 383 (quoting *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 531 (Alaska 1980)).

88. 895 P.2d at 105. Specifically, the plaintiff in *Williams* claimed that the phrase "extraordinary and unusual," used to describe the "work stress" sufficient to rise to the level of a compensable injury, was unconstitutionally vague.

*Williams* that the three *Lazy Mountain* factors had "little or nothing to do" with the situation in *Williams:*

> These factors obviously have little or nothing to do with the present case. First Amendment rights are not involved[;] the statutes in question prohibit no conduct; and the statutes give rise to neither prosecutorial action in a criminal context nor a civil enforcement action where a litigant may be at risk of losing an important right because the litigant's conduct did not meet a certain standard.[89]

We rejected the vagueness challenge in *Williams*, because "the statute merely set[] a dividing line between instances where compensation is payable and those where it is not."[90] We noted that "a lower degree of exactitude is required for civil [as opposed to criminal] statutes," and that a reading of the entire statute clarified the meaning of the challenged terms.[91]

Similarly, AS 09.17.080(a) merely sets a dividing line between non-parties who may be assigned a fault percentage and those who may not. Also, first amendment rights are not involved, AS 09.17.080 prohibits no conduct, and the statute does not give rise to criminal liability or possible civil enforcement where "a litigant may be at risk of losing an important right because the litigant's conduct did not meet a certain standard."[92] And the language of AS 09.17.080(a) is "not so conflicting and confused that it cannot be given meaning in the adjudication process."[93] The ambiguities identified by the plaintiffs do not make AS 09.17.080(a) unconstitutionally vague.

> 2. *The allocation of fault to non-parties does not violate the plaintiffs' substantive due process rights.*

 The plaintiffs also argue that AS 09.17.080 violates their substantive due process rights because it forces plaintiffs to defend responsible non-parties who may share in the fault allocation but who by definition will not appear at trial to defend themselves. Plaintiffs would have an interest in defending these non-parties because an allocation of fault to non-parties would reduce the amount of damages recoverable from the defendants.

The superior court rejected the plaintiffs' argument, holding that the "empty chair" problem does not give rise to a constitutional violation, and stated that it is "inevitable" that someone will be disadvantaged by the presence of "empty chairs" in multi-party tort cases. The superior court noted that under a system of "joint and several liability" (the former system in Alaska), the defendants are prejudiced because they face the risk of paying more than their fair share of damages, and must sue other co-defendants for contribution to remedy the situation. Under the AS 09.17.080 comparative negligence scheme, plaintiffs are prejudiced because they risk getting less than their fair share of compensation. The superior court noted that the choice between a system which disadvantages defendants and a system which disadvantages plaintiffs is a "pure public policy" choice that was made by the legislature and is not one that is "vulnerable to constitutional attack."

We have held that "[s]ubstantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose."[94] The only relevant authorities cited by the parties are two Montana Supreme Court decisions, *Plumb v. Fourth Judicial District Court, Missoula County*[95] and *Newville v. State, Department of Family Services,*[96] in which the court applied a substantive due process standard identical to our own.[97] The Mon-

89. *Id.*

90. *Id.*

91. *Id.* at 105–06.

92. *Id.* at 105.

93. *Id.*

94. *State v. Niedermeyer,* 14 P.3d 264, 267 (Alaska 2000) (quoting *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974)).

95. 279 Mont. 363, 927 P.2d 1011 (1996).

96. 267 Mont. 237, 883 P.2d 793 (1994).

97. *See Plumb,* 927 P.2d at 1016.

tana court considered two versions of a Montana comparative negligence statute mandating that fault be allocated to responsible non-parties and that party liability for damages be reduced accordingly. In *Newville*, the court struck down the first version of the statute because it "unreasonably mandate[d] an allocation of percentages of negligence to non-parties without any kind of procedural safeguard."[98] That is, even though the comparative negligence statute was enacted for a valid governmental purpose, the statute was not reasonably related to that purpose because it "arbitrarily and unreasonably" prejudiced plaintiffs who risked diminished recovery if they did not defend non-party defendants.[99]

In the later *Plumb* decision, the Montana Supreme Court again implied that the allocation of fault to non-parties would be constitutional if there were adequate procedural safeguards.[100] The court considered the next version of the comparative negligence statute passed by the Montana legislature as a response to *Newville*.[101] In the second statute, the legislature created some procedural safeguards, but the court stated in *Plumb* that these safeguards were not enough to make the statute constitutional.[102] The second statute included requirements that (1) the defendant had the burden to show non-party liability; (2) the non-party defense had to be affirmatively pled; and (3) the non-party had to be notified that it was being blamed for the injuries.[103] The court held that these procedural safeguards were constitutionally insufficient because they did not provide the non-party with an opportunity to appear and

defend itself; without this opportunity, "non-parties are likely to be assigned a disproportionate share of liability, and [the plaintiff's] recovery is likely to be reduced."[104]

*Newville* and *Plumb* are distinguishable from this appeal because AS 09.17.080(a) contains safeguards that adequately address the Montana Supreme Court's concerns. Alaska Statute 09.17.080(a) does not allow allocation of fault to non-parties if the three conditions of its exception are all met: if (1) the non-party is identified as potentially responsible, (2) the non-party is not protected by AS 09.10.055, and (3) the parties had a sufficient opportunity to join the non-party but did not do so. This exception provides the "opportunity" for the non-party to appear and defend itself that the Montana statute lacked because under AS 09.17.080(a), a defendant must join any potentially responsible non-parties as long as there is a "sufficient opportunity" to do so, or else no fault will be apportioned to non-parties. Because of these procedural protections, AS 09.17.080(a) is reasonably related to a legitimate governmental purpose and does not violate substantive due process.[105]

### D. The Offer of Judgment Procedure, AS 09.30.065, Is Facially Constitutional.

Alaska Statute 09.30.065, the offer of judgment procedure, penalizes parties who receive an offer of judgment for some sum, refuse that offer, and win a judgment after trial that is less favorable than the offered sum by five percent or more.[106] The penalty

---

**98.** 883 P.2d at 802.

**99.** *Id.* at 803.

**100.** *See* 927 P.2d at 1019–21.

**101.** *See id.* at 1018.

**102.** *See id.* at 1019–21.

**103.** *See id.* at 1019.

**104.** *Id.* at 1020.

**105.** We decline to find a substantive due process violation merely because some responsible non-parties may be employers of the plaintiff. The plaintiffs argue that AS 09.17.080(a) is "especial-

ly unfair" to plaintiffs who sue multiple defendants in connection with injuries sustained at work. The plaintiffs claim that an employer may automatically be a non-party because of its immunity under AS 23.30.055 (workers' compensation). In such a situation, the defendants may "collude" with the non-party employer to increase the employer's share of fault. These circumstances are wholly theoretical, and we decline to find a substantive due process violation based on such a hypothetical scenario, since the plaintiffs' challenge of the constitutionality of AS 09.17.080 is facial.

**106.** The rule is slightly different if there are multiple defendants; in that case the penalty applies if the judgment is less favorable than the offer by ten percent or more.

is that the offeree is required to pay all costs and between thirty percent and seventy-five percent of the offeror's attorney's fees, depending on when the offer was made.[107] The 1997 legislation altered but did not create this scheme.[108]

The plaintiffs challenge the entire statute, claiming that it is unconstitutional. The plaintiffs claim that AS 09.30.065 violates both (1) the right of access to the courts, and (2) the right to a jury trial. These contentions will be addressed in turn.

### 1. *Alaska Statute 09.30.065 does not violate the right of access to the courts.*

■ The plaintiffs claim that AS 09.30.065 violates their right of access to the courts, guaranteed by article I, section 7 of the Alaska Constitution because "in some circumstances it renders victorious plaintiffs penniless." The plaintiffs discuss a hypothetical example, in which a plaintiff who recovers almost the same amount at trial as was contained in a defendant's offer is greatly punished because she is forced to pay the defendant's attorney's fees. The superior court rejected this argument, stating that it was a "frivolous policy argument."

As we noted earlier in this opinion, in our past decisions considering the right of access to the courts, we have been concerned with impediments to actual access to the courts.[109] We decline to expand the right of access to prohibit an offer of judgment scheme. We note that this is consistent with the United States Supreme Court's rejection of a similar challenge to Federal Rule of Civil Procedure 68 in *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), in which the Court noted that "[m]erely subjecting civil rights plaintiffs to the settlement provision of Rule 68 does not curtail their access to the courts, or significantly deter them from bringing suit." [110]

### 2. *Alaska Statute 09.30.065 does not violate the right to a trial by jury.*

■ The plaintiffs also recast the preceding argument under the rubric of the right to a trial by jury, claiming that the disincentive provided by AS 09.30.065 and the accompanying "chilling effect" is so great that it effectively deprives some plaintiffs of their right to a jury trial.

We have held that a party is entitled to a jury trial if the right to a jury trial was preserved by the enactment of article I, section 16 of the Alaska Constitution—that is, there is such a right in suits "at law" where the plaintiff seeks damages.[111] Without citing any authorities, the plaintiffs ask us to hold that the right to a jury trial also includes the right to be free from financial disincentives that might persuade the parties not to seek the jury trial to which they are entitled. We decline to do so.

### E. *The Limitations Tolling Procedure for Minors, Defined by AS 09.10.140, Is Facially Constitutional.*

■ Alaska Statute 09.10.140 tolls the two-year statute of limitations for tort actions. The parties dispute both the meaning and constitutionality of AS 09.10.140 as it applies to minors.

The plaintiffs contend that AS 09.10.140 treats two different classes of minor personal injury plaintiffs differently: (1) those less than eight years of age at the time of injury, and (2) those older than eight years of age at the time of injury. The plaintiffs claim that AS 09.10.070(a) and 09.10.140(c) together provide that those plaintiffs injured before their eighth birthday have until their tenth birthday to file a personal injury action, while those injured after their eighth birthday are treated more favorably, since their

---

**107.** *See* AS 09.30.060(a).

**108.** *See* ch. 26, § 16, SLA 1997.

**109.** *See Peter v. Progressive Corp.*, 986 P.2d 865, 872–73 (Alaska 1999); *In re K.A.H.*, 967 P.2d 91, 95 (Alaska 1998); *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 358–59 (Alaska 1988).

**110.** 473 U.S. 1, 10, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).

**111.** *Loomis Elec. Protection, Inc. v. Schaefer*, 549 P.2d 1341, 1344–45 (Alaska 1976).

claims are tolled until they reach the age of majority.

The State claims that these statutes do not treat minors over the age of eight at the time of injury more favorably. The State contends that the tolling provisions of AS 09.10.140 only apply to minors under the age of eight at the time of injury. Therefore, minors over the age of eight at the time of injury have two years after their injury in which to file suit, like all other tort plaintiffs.

■ When interpreting the language of a statute, we normally give unambiguous language its plain meaning.[112] We may also rely on legislative history as a guide to interpretation, "[b]ut the 'plainer the language of a statute, the more convincing contrary legislative history must be' to interpret a statute in a contrary manner."[113]

At the outset, it is important to bear in mind that three separate but interrelated sections of AS 09.10 govern the time limits for a minor to sue for personal injury: (1) AS 09.10.070, (2) AS 09.10.140, and (3) AS 09.10.055. In order to understand the purpose and effects of section .140, it is vital to consider how sections .140 and .055 interact and how both relate to section .070.

The first of these provisions, AS 09.10.070, creates a general two-year statute of limitations for various causes of action, including personal injury actions.

The second provision, AS 09.10.140, overrides the first by tolling the two-year personal injury statute in certain cases. Subsection .140(a) broadly exempts all minors, including those with potential personal injury claims, from all statutes of limitation established in AS 09.10, including section .070's two-year personal injury limit. The period of tolling under this subsection continues throughout the years of minority, and when minors reach majority at age eighteen, subsection (a) gives them two years to sue, regardless of the nature of their cause of action. But subsection .140(c) carves out an exception to these broad tolling provisions. Focusing narrowly on minors who have potential personal injury claims and are less than eight years old when

injured, it specifies that subsection .140(a) will toll section .070's two-year time bar as to these minors only until they reach their eighth birthday.

The third provision, AS 09.10.055, overrides the second (section .140's tolling provision) by establishing a ten-year time limit for *all* personal injury actions, including actions by *all* minors. Subsection .055(a) thus specifies that, *notwithstanding* subsection .140(a)'s provision tolling the statute of limitations for minors, no person may commence a personal injury action more than ten years after the last act that causes injury. Subsection .055(b) goes on to establish a number of exceptions to the statute of repose, describing situations in which subsection .055(a)'s ten-year time bar will not apply. Two exceptions are important here.

First, paragraph .055(b)(3) specifies that the ten-year limit never applies if a shorter period of limitation attaches:

> This section does not apply if
>
> . . . .
>
> (3) a shorter period of time for bringing the action is imposed under another provision of law.

This exception makes section .070's usual two-year time limit for personal injury claims controlling if it would otherwise apply; the exception thereby clarifies that section .055 operates as a statute of repose, setting *outer* limits for commencing personal injury actions, even when the statute of limitations would allow them.

Second, paragraph .055(b)(5) establishes a discovery rule governing injured minors that tolls the period of repose based on the reasonable perceptions of their parents or guardians:

> This section does not apply if
>
> . . . .
>
> (5) the facts that would constitute accrual of a cause of action of a minor are not discoverable in the exercise of reasonable care by the minor's parent or guardian.

---

**112.** *See In re Johnstone,* 2 P.3d 1226, 1231 (Alaska 2000).

**113.** *Id.* (quoting *Ganz v. Alaska Airlines, Inc.,* 963 P.2d 1015, 1019 (Alaska 1998)).

As can be seen, this discovery provision treats all injured minors equally and does not depend on the date of injury.[114]

The interplay of the foregoing provisions sheds considerable light on subsection .140(c)'s purpose. In drawing a line between minors who are injured before and those injured on or after their eighth birthdays, subsection .140(c) tacitly acknowledges both the underlying purpose of subsection .140(a)'s tolling provision and the overriding effect of section .055's statute of repose.

By tolling section .070's two-year statute of limitations until a child reaches majority, subsection .140(a) seeks to enable injured minors to age to majority without losing their claims, so that they will be able sue on their own instead of through their parents or guardians. But this purpose can not be attained when minors are injured before reaching their eighth birthdays. An injured minor who is less than eight years old must wait more than ten years before reaching majority. Since the ten-year outer limit of the statute of repose specifically overrides subsection .140(a)'s provision tolling the two-year statute of limitations for personal injury claims, the statute of repose will always bar these children from suing in their own right *unless* their claims fall within one of the exceptions contained in the statute of repose itself. But in that event, subsection .055(b) specifies that subsection .055(a) will no longer cancel subsection .140(a)'s tolling provisions—which will once again govern the minors' claims.[115]

In short, subsection .140(c) simply separates those children for whom tolling the statute of limitations would preserve the ability to sue as adults from those whose ability to sue on their own will necessarily depend on exceptions included in the statute of repose.

The line itself is logical, then. And once the line is drawn, there is good reason for subsection .140(c)'s disparate treatment of younger minors: The ten-year limit imposed by the statute of repose will eventually require all minors who are under eight years old when injured (provided that they do not fall within one of the statute's exceptions, in which event their claims are tolled) to sue through their parents or guardians; if these minors ultimately must sue through their parents or guardians, then it serves no useful purpose, and only encourages stale claims, to let their parents or guardians wait ten years before commencing an action.

Thus, subsection .140(c)'s disparate treatment of minors under the age of eight is rationally based and furthers legitimate state interests.

F. *The Provision Granting Partial Tort Immunity to Hospitals, AS 09.65.096, Is Facially Constitutional.*

 Alaska Statute 09.65.096 grants partial immunity to hospitals for actions taken by emergency room physicians who are not employees but are rather independent contractors.[116] Under AS 09.65.096, hospitals

---

**114.** This exception also is important in connection with the plaintiffs' related argument that the statute of repose impermissibly abolishes the discovery rule. Paragraph (b)(5) and other provisions of subsection .055(b) combine to establish a somewhat narrowed, but still reasonably broad, statutory approximation of the common law discovery rule. Moreover, these provisions only govern subsection .055's ten-year statute of repose; they do not affect the common law discovery rule as it applies to subsection .070's two-year statute of limitations.

**115.** Although reinstating subsection .140(a)'s tolling provisions would not affect subsection .140(c), which tolls the two-year statute for younger children only until their eighth birthdays, the two-year statute would not be triggered under subsection .140(c) for any child whose case fell

within the traditional discovery rule at the time of the child's eighth birthday.

**116.** AS 09.65.096(a) provides, in part:

A hospital is not liable for civil damages as a result of an act or omission by an emergency room physician who is not an employee or actual agent of the hospital if the hospital provides notice that the emergency room physician is an independent contractor and the emergency room physician is insured as described under (c) of this section. The hospital is responsible for exercising reasonable care in granting privileges to practice in the hospital, for reviewing those privileges on a regular basis, and for taking appropriate steps to revoke or restrict privileges in appropriate circumstances. The hospital is not otherwise liable for the acts or omissions of an emergency

are responsible only for exercising reasonable care in granting and reviewing privileges to practice in the hospital. Hospitals are not otherwise responsible for actions taken by emergency room physicians who are independent contractors, as long as the hospital provides notice,[117] and the physicians have prescribed levels of malpractice insurance.[118]

Alaska Statute 09.65.096 was created in response to our decision in *Jackson v. Power*, in which we held that hospitals have a non-delegable duty to provide non-negligent care in their emergency rooms, and that hospitals cannot avoid respondeat superior liability by making their emergency room doctors "independent contractors." [119]

The plaintiffs challenge AS 09.65.096 on one basis—they claim that the statute is a violation of substantive due process. The plaintiffs claim that the legislature's modification of the common law, as it was interpreted in *Jackson*, is a violation of substantive due process because the legislature's action is in violation of "sound public policy." Specifically, the statute is allegedly against public policy because it is a "legislatively imposed exculpatory clause inserted in an adhesion contract"—the contract formed when a patient is forced to go to an emergency room.

▮▮▮ However, the plaintiffs' argument fails because the legislature was free to override our decision in *Jackson v. Power*. Our decision in *Jackson* was based on our interpretation of the common law.[120] As we have

stated previously, the legislature has the power to modify the common law.[121] Indeed, this principle is itself enshrined in AS 01.10.010, which states that the law to be applied by courts is "the common law not inconsistent with the Constitution of the State of Alaska or the Constitution of the United States *or with any law passed by the legislature of the State of Alaska.*" (Emphasis added.) Therefore, the legislature was well within its rights to enact AS 09.65.096.

### G. *The Statute of Repose, AS 09.10.055, Is Facially Constitutional.*

▮▮▮ The statute of repose, AS 09.10.055, imposes a ten-year limitations period, in addition to the two-year statute of limitations under AS 09.10.140, for actions for personal injury, death, or property damage. Even if the two-year limitations period of AS 09.10.140 is tolled, the ten-year period of AS 09.10.055 may separately bar an action.

Specifically, under AS 09.10.055, actions must be filed within ten years after the earlier of (1) "substantial completion" of construction that allegedly caused the injury, or (2) the last act alleged to have caused the personal injury.[122] There are exceptions for certain types of injuries,[123] and the limitations period is tolled during a period in which a "foreign body" upon which a cause of action is based remains undetected in a plaintiff's body.[124] Chapter 26, SLA 1997 altered the statute of repose, which formerly applied only to actions based on injuries in connection with improvements to real property,[125]

---

room physician who is an independent contractor.

**117.** *See* AS 09.65.096(a)(1–4).

**118.** *See* AS 09.65.096(c).

**119.** 743 P.2d 1376, 1382–85 (Alaska 1987); *see* ch. 26, § 1(6), SLA 1997.

**120.** *See* 743 P.2d at 1382–85.

**121.** *See Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995) (implicitly holding that, "in the absence of a statute directing a contrary rule," courts were empowered to interpret the common law); *Surina v. Buckalew*, 629 P.2d 969, 973 (Alaska 1981) (noting that this court has the power "to explicate the common law ... unless and until the Alaska legislature acts to modify it").

**122.** AS 09.10.055(a).

**123.** AS 09.10.055(b) exempts certain injuries caused by hazardous waste, intentional acts, gross negligence, fraud, breach of an express warranty, defective products, and breach of trust or fiduciary duty. There is also an exception where "the facts that would give notice of a potential cause of action are intentionally concealed," or, in the case where the injured party is a minor, the facts are "not discoverable in the exercise of reasonable care by the minor's parent or guardian."

**124.** *See* AS 09.10.055(c).

**125.** *See* former AS 09.10.055(a) (providing that fifteen-year limitations period applies to actions based on "a defect in the design, planning, su-

and shortened the period from fifteen to ten years.[126]

The plaintiffs offer two arguments to challenge the constitutionality of the statute of repose: (1) the statute violates equal protection; and (2) the statute violates due process because it overturns the "discovery rule." These arguments will be discussed in turn.

### 1. *The statute of repose does not violate equal protection.*

The plaintiffs claim that the statute of repose constitutes a violation of equal protection because it treats two classes of minor plaintiffs differently. Minors who are less than eight years old at the time of injury will have their claims barred before they reach the age of majority under the statute of repose, while minors who are more than eight years old at the time of injury will have their claims barred after they reach the age of majority. The plaintiffs claim that this constitutes differential treatment of similarly situated minors because the first group of minors must rely on others to bring suit on their behalf, if suit is to be brought before the claim is lost.

However, we need not subject AS 09.10.055 to equal protection analysis because the plaintiffs have failed to make the threshold showing necessary for an equal protection violation claim. As we stated in *Matanuska–Susitna Borough School District v. State*, "[w]here there is no unequal treatment, there can be no violation of the right to equal protection of law," and "we need not subject the challenged laws to sliding scale scrutiny."[127] The statute of repose does not treat minors differently: It subjects all minors, as well as all other plaintiffs in actions for personal injury, death, or property dam-

age, to a ten-year limitations period. As the plaintiffs imply, the statute does have an effect on the tolling for minors imposed by AS 09.10.140(a). Under AS 09.10.140(a), discussed earlier in this opinion, the normal two-year limitations period is tolled until the plaintiff reaches the age of majority. Alaska Statute 09.10.055 limits this tolling for plaintiffs injured before the age of eight by barring their actions ten years after the injury when they have not yet reached the age of majority. However, this is not differential treatment since the ten-year statute of repose applies to all plaintiffs. Instead, the legislature simply made a policy decision to create a separate statute of repose in addition to the statute of limitations.[128]

### 2. *The statute of repose does not violate due process.*

The plaintiffs also claim that the statute of repose violates due process by effectively abolishing our "discovery rule," which provides that the statute of limitations does not start running until the plaintiff discovers, or reasonably should discover, the existence of all of the elements of his cause of action.[129] In some cases a plaintiff might not discover a cause of action until after the ten-year limitations period in the statute of repose has run, and therefore the claim would be lost before the discovery rule could operate to fully toll the limitations period under AS 09.10.070(a). The plaintiffs argue that this is a violation of due process because it departs from the common law. We reject this argument. The discovery rule is a common law rule created by this court, and is not based on any constitutional principles.[130] As noted earlier in this opinion, the legislature is free to modify or abolish common law rules.[131] Therefore, to

pervision, construction, or inspection or observation of construction of an improvement to real property").

**126.** *See* ch. 26, § 5, SLA 1997.

**127.** 931 P.2d 391, 397 (Alaska 1997).

**128.** We also note that former AS 09.10.055 had the same differential impact on minors that the plaintiffs challenge here. Former AS 09.10.055(a), with its fifteen-year limitations period, would apply to plaintiffs under the age of

three at the injury, and would have had the effect of barring their claims before the age of majority.

**129.** *See Pedersen v. Zielski*, 822 P.2d 903, 906–07 (Alaska 1991).

**130.** *See City of Fairbanks v. Amoco Chemical Co.*, 952 P.2d 1173, 1177 n. 8 (Alaska 1998); *Pedersen*, 822 P.2d at 906–07.

**131.** *See Bauman v. Day*, 892 P.2d 817, 828 (Alaska 1995) (implicitly holding that, "in the absence of a statute directing a contrary rule," courts

the extent that AS 09.10.055 limits the traditional discovery rule,[132] the legislature had the power to do so in enacting the statute.

### H. Chapter 26, SLA 1997 Does Not Violate the "One Subject" Rule of Article II, Section 13 of the Alaska Constitution.

In addition to all of the facial challenges to specific components of the tort reform legislation considered above, plaintiffs claim that all of chapter 26, SLA 1997 is unconstitutional because it violates the "one subject" rule of article II, section 13 of the Alaska Constitution.

We have stated that legislation will not violate the "one subject" rule as long as it embraces a single general subject:

> To determine if a bill is confined to one subject, all that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated ... should fall under some one general idea, be so connected with or related to each other, either logically or in

popular understanding, as to be part of, or germane to, one general subject.[133]

The purpose of the one-subject rule is to prevent legislative "log-rolling"—the practice of "deliberately inserting in one bill several dissimilar or incongruous subjects in order to secure the necessary support for passage of the measure."[134] The plaintiffs argue that chapter 26, SLA 1997 violates the one subject rule because its provisions are "scattered" and do not embrace a common subject.

However, we have also stated that "what constitutes one subject for purposes of article II, § 13 is broadly construed," and that only a "substantial and plain" violation of the one subject rule will lead us to strike down legislation on this basis.[135] In past decisions, this court and the court of appeals have considered legislation that was in some cases very broad: We have held in each case that the legislation was within one subject, such as "land" or "the criminal law."[136] We have only struck down legislation once on this basis, in a unique situation wholly unrelated to the circumstances of this appeal.[137] Even

---

were empowered to interpret the common law); *Surina v. Buckalew*, 629 P.2d 969, 973 (Alaska 1981) (noting that this court has the power "to explicate the common law ... unless and until the Alaska legislature acts to modify it").

**132.** *See* note 114, *supra.*

**133.** *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 415 (Alaska 1982) (internal quotations and citations omitted).

**134.** *Gellert v. State*, 522 P.2d 1120, 1122 (Alaska 1974).

**135.** *First Nat'l Bank of Anchorage*, 660 P.2d at 415.

**136.** *See Yute Air Alaska, Inc. v. McAlpine*, 698 P.2d 1173, 1175–77, 1181 (Alaska 1985) (initiative proposing both deregulation of Alaska's intra-state air and motor carriers and deregulation of federally regulated interstate sea carriers is within one subject, "transportation"); *First Nat'l Bank of Anchorage*, 660 P.2d at 414–15 (legislation relating to fraudulent sale of land, interests in and dispositions of subdivisions, leases, and rents is within one subject, "land"); *Short v. State*, 600 P.2d 20, 24 (Alaska 1979) (legislation relating to bond projects for correctional and public safety facilities is within one subject, "general public safety function of protecting life and property"); *North Slope Borough v. Sohio Petro-*

*leum Corp.*, 585 P.2d 534, 545–46 (Alaska 1978) (act dealing with matters of both municipal and state taxation is within one subject, "state taxation"); *Gellert*, 522 P.2d at 1123 (legislation including both boat harbor and flood control projects is within one subject, a "cooperative water resources development program"); *Suber v. Alaska State Bond Comm.*, 414 P.2d 546, 556–57 (Alaska 1966) (act concerning disaster relief that contained both grants to homeowners and criminal penalties to protect the integrity of the grants is within one subject, "grants to homeowners"); *Galbraith v. State*, 693 P.2d 880, 885–86 (Alaska App.1985) (legislation modifying various diverse aspects of the criminal law—sexual assault, assault, presumptive sentences for certain felony offenders, telephonic search warrants, disposal of seized and recovered property, the insanity defense, the defense of necessity, joyriding, immunity, sentencing procedure—is within one subject, "criminal law"); *Van Brunt v. State*, 646 P.2d 872, 874–75 (Alaska App.1982) (statute relating to sale of alcohol and to drunk driving is within one subject, "intoxicating liquor").

**137.** In *State v. A.L.I.V.E. Voluntary*, 606 P.2d 769 (Alaska 1980), we struck down a statute enabling the legislature to exercise a "legislative veto" by annulling agency regulations. Because this would allow the legislature to legislate without observing normal enactment procedures, including the "one subject" rule, we struck down the statute. *Id.* at 771–74.

though the provisions of chapter 26, SLA 1997 concern different matters, they are all within the single subject of "civil actions." [138]

## V. CONCLUSION

For the reasons stated above, we reject the plaintiffs' facial challenges and hold that the challenged provisions of chapter 26, SLA 1997 are facially constitutional under the Alaska and United States Constitutions.[139] We therefore AFFIRM the superior court's decision as to all elements of chapter 26, SLA 1997.[140]

MATTHEWS, Justice, not participating.

BRYNER, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

CARPENETI, Justice, dissenting in part.

BRYNER, Justice, with whom CARPENETI, Justice, joins, dissenting in part.

I disagree with those parts of the plurality opinion that would uphold the 1997 tort reform act's noneconomic damages cap and punitive damages forfeiture provision. In my view, the cap on noneconomic damages violates Alaska's jury trial and equal protection clauses, and the provision requiring plaintiffs to forfeit half their awards of punitive damages to the state violates substantive due process and the takings clause. Although the plurality opinion has limited impact and leaves these points open to future consideration,[1] I think that they are sufficiently important to require me to explain my reasons for disagreeing.

*The Noneconomic Damages Cap Is Unconstitutional.*

### Jury Trial

Although cases from other states are split on the issue,[2] I think that the better-rea-

**138.** In addition to its "tort reform" provisions, chapter 26, SLA 1997 includes provisions affecting other civil actions, *see, e.g.,* §§ 11–14, 16–19; statutes of limitations for property and contract actions, *see* §§ 3–4; payment of claims after liquidation of a state bank, *see* § 2; and eminent domain, *see* § 21.

**139.** Because we find the entire Act constitutional, we need not address appellants' argument that the Act is not severable and therefore must be struck down as unconstitutional.

**140.** Because the court is equally divided on two issues -- the constitutionality of the Tort Reform act's cap on noneconomic damages and its requirement that half of punitive damages awards be paid to the State -- this decision has the effect of affirming the superior court's ruling on these issues in the present case but will not be binding in future cases. *See Ward v. Lutheran Hosps. & Homes Soc'y of America, Inc.,* 963 P.2d 1031 n. 11 (Alaska 1998). On all other issues presented to the court in this case, at least three justices agree; therefore, the court's decision on these issues does have precedential value and is binding on future cases.

**1.** Because we are equally divided on these points, the decision favoring affirmance has the effect of a plurality opinion: it will affirm the superior court's ruling in the present case but will not be binding in future cases. Our case law establishes that "[a] decision by an evenly divided court results in an affirmance." *Ward v. Lutheran Hosps. & Homes Soc'y of America, Inc.,* 963 P.2d 1031, 1037 n. 11 (Alaska 1998) (quoting *Thoma v. Hickel,* 947 P.2d 816, 824 (Alaska

1997)). Moreover, "an affirmance by an equally divided court is not precedent." *City of Kenai v. Burnett,* 860 P.2d 1233, 1239 n. 11, 1246 (Alaska 1993) (Compton, J., concurring).

**2.** *Compare Moore v. Mobile Infirmary Ass'n,* 592 So.2d 156, 159–65 (Ala.1991)(holding that damage cap statute violated state constitutional right to trial by jury), *Smith v. Dep't of Ins.,* 507 So.2d 1080, 1088–89 (Fla.1987) (same), *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251, 258–60 (1988) (same), *Lakin v. Senco Prods., Inc.,* 329 Or. 62, 987 P.2d 463, 469–75 (1999) (same), *and Sofie v. Fibreboard Corp.,* 112 Wash.2d 636, 771 P.2d 711, 719–23 (1989) (same), *with Davis v. Omitowoju,* 883 F.2d 1155, 1159–65 (3d Cir.1989) (holding that damage caps did not violate the Seventh Amendment), *Kirkland v. Blaine County Med. Ctr.,* 134 Idaho 464, 4 P.3d 1115, 1119–20 (2000) (holding that damage caps did not violate the state's constitutional right to trial by jury), *Peters v. Saft,* 597 A.2d 50, 53–54 (Me.1991) (same), *Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102, 116–18 (App.1992) (same), *English v. New England Med. Ctr., Inc.,* 405 Mass. 423, 541 N.E.2d 329, 331–32 (1989) (same), *Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 906–07 (Mo.1992) (same), *Wright v. Colleton County Sch. Dist.,* 301 S.C. 282, 391 S.E.2d 564, 569–70 (1990) (same), *Pulliam v. Coastal Emergency Servs. of Richmond, Inc.,* 257 Va. 1, 509 S.E.2d 307, 314–315 (1999) (same), *Etheridge v. Med. Ctr. Hosps.,* 237 Va. 87, 376 S.E.2d 525, 528–29 (1989) (same), *Robinson v. Charleston Area Med. Ctr.,* 186 W.Va. 720, 414 S.E.2d 877, 887–88 (1991) (same), *and Guzman*

soned cases support the conclusion that AS 09.17.010's cap on noneconomic damages violates the right to a jury trial under the Alaska Constitution.[3] Construing constitutional provisions that are textually and historically similar to Alaska's, courts in Kansas, Oregon, Washington, and Alabama have held that noneconomic damages caps violate a plaintiff's right to a jury trial.[4] These courts observe that the jury's function has traditionally included determining the amount of damages a plaintiff should actually receive; and since the demand for damages itself triggers the right to a jury trial under their constitutional provisions, these courts reason that, regardless of whether the jury's decision is technically characterized as a finding of fact or conclusion of law, "[i]t would be illogical ... to find that a jury, empaneled because monetary damages are sought, could not then fully determine the amount of damages suffered." [5]

In contrast, the cases relied on by the plurality opinion—chiefly *Davis,*[6] *Pulliam,*[7] and *Etheridge,*[8]—are readily distinguishable. The two Virginia opinions—*Pulliam* and *Etheridge*—interpret a unique provision of the Virginia constitution stating that a "trial by jury is *preferable* to any other"; [9] moreover, they draw heavily on the status of the right to a jury trial under Virginia law when that state adopted its constitution in the late 1700s.[10] And the federal case—*Davis*—bases its decision on the Seventh Amendment's

reexamination clause; [11] yet the Alaska Constitution's jury trial provision contains no reexamination clause, and the Seventh Amendment has no application in state-court civil jury cases.

Accordingly, I would follow the well-reasoned decisions in Kansas, Oregon, Washington, and Alabama and would hold that Alaska's noneconomic damages cap violates the Alaska Constitution's guarantee of a jury trial.

*Equal Protection*

Despite the strength of the plaintiffs' argument that the damages cap deprives them of their constitutional right to a jury trial, it seems to me that their argument under Alaska's equal protection clause [12] provides an even more compelling basis for holding the damages cap unconstitutional.

Many state cases addressing challenges to damages caps have considered equal protection arguments; these cases are about evenly split, and their outcome usually centers on what level of equal protection scrutiny the court chooses to apply to the issue. Almost all courts that have upheld damages caps against equal protection challenges have done so under the lowest level of scrutiny: the "rational basis" test, which asks only if the legislature might have had any logical reason for adopting the cap.[13] Conversely, cases that have applied heightened, mid-level equal protection scrutiny have uniformly de-

---

*v. St. Francis Hosp., Inc.,* 240 Wis.2d 559, 623 N.W.2d 776, 783–85 (App.2000) (same), *rev. denied,* 242 Wis.2d 543, 629 N.W.2d 783 (2001).

**3.** The right to trial by jury in Alaska is secured by article I, section 16 of the Alaska Constitution: "In civil cases where the amount in controversy exceeds two hundred fifty dollars, the right of trial by a jury of twelve is preserved to the same extent as it existed at common law."

**4.** *See Moore,* 592 So.2d at 159–65; *Bell,* 757 P.2d at 258; *Lakin,* 987 P.2d at 473–74; *Sofie,* 771 P.2d at 721–22.

**5.** *Bell,* 757 P.2d at 258.

**6.** 883 F.2d at 1159–65.

**7.** 509 S.E.2d at 314–15.

**8.** 376 S.E.2d at 529.

**9.** Va. Const. art. I, § 11 (emphasis added).

**10.** *See* 509 S.E.2d at 314, 376 S.E.2d at 528–29.

**11.** 883 F.2d at 1159–65.

**12.** Alaska Const. art. I, § 1.

**13.** *See, e.g., Peters v. Saft,* 597 A.2d 50, 53 (Me. 1991); *Murphy v. Edmonds,* 325 Md. 342, 601 A.2d 102, 111–12 (1992); *English v. New England Med. Ctr.,* 405 Mass. 423, 541 N.E.2d 329, 333 (1989); *Adams v. Children's Mercy Hosp.,* 832 S.W.2d 898, 903–05 (Mo.1992); *Wright v. Colleton County Sch. Dist.,* 301 S.C. 282, 391 S.E.2d 564, 570 (1990); *Pulliam,* 509 S.E.2d at 317; *Etheridge,* 376 S.E.2d at 533; *Robinson v. Charleston Area Med. Ctr.,* 186 W.Va. 720, 414 S.E.2d 877, 886–88 (1991); *Guzman v. St. Francis Hosp., Inc.,* 240 Wis.2d 559, 623 N.W.2d 776, 788 (App.2000).

clared noneconomic damages caps invalid, concluding that the caps run aground on the mid-level scrutiny test's means-to-end-fit requirement; these cases typically ask whether a substantial or legitimate legislative reason actually existed for adopting a cap and whether the adopted cap actually bears a close and substantial relationship to the legislature's underlying interest.[14]

In the present case, the plurality opinion describes the interest asserted by the plaintiffs as an interest in "unlimited damages"; the plurality then dismisses this interest as "merely economic"—too trifling to deserve anything but the lowest level of constitutional scrutiny.[15]

But in truth the plaintiffs assert a considerably more fundamental and focused interest: their interest in a civil justice system that affords all similarly situated negligence victims an equal opportunity to seek full compensation for their injuries. To be sure, this interest can be characterized as economic. Yet it is hardly the selfish and unbounded interest in "unlimited damages" that the plurality opinion ascribes to the plaintiffs. Rather, the asserted interest is properly limited to personal injuries that the legislature has expressly recognized to be real and that plaintiffs can prove that they actually suffered.

Furthermore, despite the plurality opinion's contrary assumption, Alaska's test of equal protection does not automatically relegate all economic interests to low-level scrutiny.[16] Instead, because it incorporates a pure sliding-scale approach, Alaska's equal protection test eschews such rigid categories and recognizes "a continuum of available levels of scrutiny." In this continuum, the importance of any particular interest—whether economic or not—is a relative matter to be judged by realistically applying "an adjustable 'uniform-balancing' test" that considers the overall importance of the specific interest at issue in relation to other societal interests.[17] And notably, in applying this test on prior occasions, this court has not hesitated to identify some economic interests as ranking sufficiently high in the continuum of societal interests to deserve close scrutiny.[18]

Here, when considered against a backdrop of other imaginable economic interests, the plaintiffs' specific interest in access to the courts to seek full recovery for their actual injuries easily qualifies as an important economic interest. Whether labeled "a mere economic interest" or an interest implicating plaintiffs' constitutional right of access to the courts, then, this interest deserves considerably more scrutiny under Alaska's sliding-scale test than the minimal glance that the plurality chooses to give it.[19]

**14.** *See, e.g., Moore v. Mobile Infirmary Ass'n,* 592 So.2d 156, 166–70 (Ala.1991); *Wright v. Central Du Page Hosp. Assoc.,* 63 Ill.2d 313, 347 N.E.2d 736, 743–44 (1976); *Sibley v. Bd. of Superiors of La. State Univ.,* 477 So.2d 1094, 1107–09 (La. 1985); *Brannigan v. Usitalo,* 134 N.H. 50, 587 A.2d 1232, 1233–36 (1991); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 831, 835–36 (1980); *Richardson v. Carnegie Library Rest., Inc.,* 107 N.M. 688, 763 P.2d 1153, 1163–65 (1988); *Arneson v. Olson,* 270 N.W.2d 125, 132–33 (N.D. 1978); *Condemarin v. Univ. Hosp.,* 775 P.2d 348, 353–56 (Utah 1989). In addition, some cases have invalidated caps under state constitutional provisions other than equal protection that impose essentially identical means-to-end tests. *See, e.g., Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 757 P.2d 251, 259 (1988)("Due process requires that legislative means selected have a real and substantial relation to the objective sought."); *Best v. Taylor Mach. Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057, 1076 (1997) (special legislation clause); *Ohio Acad. of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062, 1089–90

(1999)(due process); *Morris v. Savoy,* 61 Ohio St.3d 684, 576 N.E.2d 765, 770–71 (1991)(same).

**15.** *See* Plurality Opinion at 13–14.

**16.** *See Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264, 269 (Alaska 1984).

**17.** *Id.*

**18.** *See, e.g., State, Dep't of Labor v. Enserch Alaska Const., Inc.,* 787 P.2d 624, 632–33 (Alaska 1989).

**19.** *See id.* at 633 n. 17:
> We now state the proper inquiry for enactments impairing rights as important as the right to engage in economic endeavor. We do not question the fundamental nature of our state equal protection analysis: it remains a single, flexible test and not a rigid, tiered approach like that employed in interpreting the equal protection clause of the U.S. Constitution. Enactments impairing rights more or less important than the right to engage in

Persuasive decisions from other states strongly support this conclusion. Courts considering equal protection challenges to damages caps often identify two offensive features—one involving disparate treatment of tortfeasors and the other involving disparate treatment of negligence victims. First, a noneconomic damages cap like Alaska's treats wrongdoers disparately by requiring those who negligently cause minor or modest injuries to pay fully, while allowing those who inflict the most serious injuries to pay only partial damages.[20] Second—and worse, I submit—the cap treats victims of negligence disparately by allowing those who suffer slight or modest personal injuries to recover their full measure of damages, while forcing those who suffer the most serious injuries to accept only partial damages and to absorb the rest of the loss themselves.[21]

In finding that this form of disparity compels heightened scrutiny, the Utah Supreme Court stressed that low-level equal protection review is particularly "inappropriate when dealing with a fundamental principle of American law that victims of wrongful or negligent acts should be compensated to the extent that they have been harmed."[22] Similarly, in deciding to use mid-level scrutiny to review a damages cap challenged under the New Mexico constitution's equal protection clause, the New Mexico Supreme Court explained,

> these classifications effect a substantial injustice in this case. The classifications infringe an individual's important interest to be compensated fully for his injuries, especially when, as is alleged in the instant case, they are a result of no fault of his own. This interest, in our view, certainly is amply important and substantial to justify the invocation of at least the heightened,

> economic endeavor shall receive more or less scrutiny when challenged under the equal protection clause of the Alaska Constitution.

intermediate test instead of the minimum rationality test. We are persuaded also that the class of tort victims affected by the damage cap is "sensitive" enough to the injustice wrought to warrant applying the heightened test. Consequently, we take the intermediate approach and analyze the constitutional challenge in this case under heightened scrutiny.[23]

Yet even if we reject these thoughtful assessments and choose to apply the lowest level of scrutiny permitted under Alaska's equal protection clause, a correct application of Alaska's sliding-scale test would still compel the conclusion that the plaintiffs' equal protection challenge is meritorious.

As already noted, other courts that have rejected equal protection challenges to damages caps have invariably used the highly deferential "rational basis" test. This test asks a single hypothetical question: whether the legislature might have had any legitimate reason to act; if any legitimate interest is conceivable, the challenged statute is valid.[24] But in *Isakson v. Rickey*,[25] Alaska expressly repudiated this formulation of the rational basis standard, choosing to replace its single hypothetical question with a twofold inquiry that requires courts to determine, first, whether a legitimate objective for legislative action *actually* existed and, second, whether the specific legislation adopted bears a close and substantial relationship to the underlying state interest.[26]

In *State v. Erickson*, we expressly incorporated *Isakson's* standard as the test that defines the lowest level of scrutiny permissible under Alaska's sliding-scale equal protection analysis.[27] Thus, even assuming that the plaintiffs' economic interests in this case implicate only the lowest possible level of

20. *See, e.g., Richardson v. Carnegie Library Rest.,* 107 N.M. 688, 763 P.2d 1153, 1163 (1988).

21. *Id.; see also Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825, 838 (1980).

22. *Condemarin v. Univ. Hosp.,* 775 P.2d 348, 354 (Utah 1989).

23. *Richardson,* 763 P.2d at 1163–64.

24. *See* cases cited in footnote 13 above.

25. 550 P.2d 359 (Alaska 1976).

26. *See id.* at 362–63.

27. 574 P.2d 1, 12 (Alaska 1978); *see also Alaska Pac. Assurance Co. v. Brown,* 687 P.2d 264, 269–70 (Alaska 1984).

scrutiny on Alaska's sliding scale, our equal protection standard still requires us to consider two issues: First we must ask whether the legislature actually sought to further a legitimate goal in adopting a noneconomic damages cap; second, if we decide that it did, we then must determine whether the legislature's chosen means—the statute at issue—bears a substantial relationship to its ostensible purpose. This latter determination requires us to undertake a narrow evaluation of "the state's interest *in the particular means employed* to further its goals." [28] Thus, as Justice Rabinowitz emphasized in *Kenai Peninsula Borough v. State,* Alaska's sliding-scale test is especially demanding in cases at the lower end of the equal protection spectrum: "On several occasions we have ... explained that where there is no fundamental right at stake, the equal protection clause of the Alaska Constitution imposes a stricter standard than its federal counterpart." [29]

In the present case, the plurality opinion fails to apply this more rigorous test. While acknowledging the correct standard, the plurality effectively applies a rational basis test, finding that the damages cap passes both parts of Alaska's equal protection test—the legitimate state interest requirement and the substantial relationship requirement—solely because the damages cap *might* serve the legislature's general tort reform goals: "The record indicates that the legislature considered at least some evidence tending to show that damages caps ... could have a positive effect on the legislature's objectives." [30]

Although the plurality's rational basis analysis certainly identifies a potentially legitimate state interest, it falls short of complying with Alaska's low-level scrutiny test in two ways: by neglecting to ask whether the rational purpose that the plurality has identified was a goal that the legislature actually sought to advance by enacting the damages cap and, more important, by neglecting to

look for a fair and substantial means-to-end fit between the damages cap and the legislature's ostensible goal—that is, by failing to examine "the state's interest in *the particular means* employed to further its goals." [31]

The plurality opinion likewise ignores the case law of other states: virtually every case that *has* applied this narrower means-to-end-fit test has concluded that damages caps are unconstitutional. Almost all states besides Alaska use a conventional, three-tier equal protection analysis. Because that analysis applies the deferential, rational basis test at the lowest level of scrutiny, the means-to-end-fit test these other states use for mid-level scrutiny is functionally identical to the standard required under Alaska's sliding-scale test for low-level scrutiny. As the plurality opinion itself acknowledges in describing Alaska's test, "[a]t the low end of the sliding scale, we have held that a substantial relationship between means and ends is constitutionally adequate." [32] Compare this, for example, to the mid-level standard of scrutiny described by the New Mexico Supreme Court in requiring the state to demonstrate that a challenged damages cap had "a substantial relationship to a legitimate or important governmental purpose." [33] Applying this standard to a noneconomic damages cap that was similar to Alaska's, the New Mexico court found itself "unable to fathom" a substantial relationship between the cap and any conceivably legitimate or important purpose.[34]

New Mexico's description of the applicable standard typifies the formulation of mid-level scrutiny applied by other courts using a conventional three-tier approach to equal protection review. And as already noted, courts that have applied mid-level scrutiny instead of the rational basis test have almost invariably concluded that damages caps violate the test's means-to-end-fit requirement.

---

**28.** *Alaska Pac. Assurance Co.,* 687 P.2d at 269 (emphasis added).

**29.** 743 P.2d 1352, 1371 (Alaska 1987).

**30.** Plurality Opinion at 18.

**31.** *Alaska Pac. Assurance Co.,* 687 P.2d at 269 (emphasis added).

**32.** *Id.* at 269–70.

**33.** *Richardson v. Carnegie Library Rest.,* 107 N.M. 688, 763 P.2d 1153, 1164 (1988).

**34.** *Id.*

Because these cases apply a standard identical to Alaska's lowest level of constitutional scrutiny, they should guide our decision in the present case. As they explain, the arbitrary nature of the means-to-end fit under this test is apparent:

[I]t is not enough that the statute as a whole might tend to serve the asserted purpose. Each statutory classification "'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'"

There is no logically supportable reason why the most severely injured malpractice victims should be singled out to pay for special relief to medical tortfeasors and their insurers. The idea of preserving insurance by imposing huge sacrifices on a few victims is logically perverse. Insurance is a device for spreading risks and costs among large numbers of people so that no one person is crushed by misfortune. In a strange reversal of this principle, the statute concentrates the costs of the worst injuries on a few individuals.

. . . .

Such arbitrary treatment cannot be justified with reference to the purpose of the statute. Without speculating on the wisdom of the possible alternatives, it is plain that the Legislature could have provided special relief to health care providers and insurers without imposing these crushing burdens on a few arbitrarily selected victims.[35]

In the present case, the state offers nothing to justify the seemingly absolute disconnect between the legislature's stated tort reform goals—reducing insurance costs, discouraging frivolous claims, and preventing excessive verdicts—and the *particular* means it chose to attain those goals when it enacted the damages cap. Nor does the plurality opinion discuss—or even acknowledge—this breach of Alaska's particularized nexus requirement.

Because I see no substantial relation between the specific means chosen by the legislature and the legitimate ends it ostensibly sought to achieve, I would conclude that the noneconomic damages cap violates Alaska's equal protection clause—even assuming that the plaintiffs' economic interests are so unimportant as to qualify only for the lowest allowable level of scrutiny under the Alaska Constitution.[36]

### The Punitive Damages Forfeiture Statute Is Invalid.

I further believe that the plurality opinion fails to make a persuasive case for upholding AS 09.17.020(j)'s punitive damages forfeiture requirement.

### Substantive Due Process

The plurality opinion accepts without any meaningful analysis the state's position that the forfeiture statute is minimally rational—and thus passes muster under the substantive due process requirement—because it serves as a general "deterrent to prevent future harm."[37] But the state's general deterrence goal fails to withstand even minimal, rational basis scrutiny.

Of course nobody questions the truth of the general proposition that punitive damages do in fact deter future public harm. But this undisputed deterrent effect cannot itself justify the challenged forfeiture provision, for an award of full punitive damages to the plaintiff serves to deter future harm as fully as an award that splits the punitive damages between the state and the plaintiff. The legislature's mandate to award half the jury's verdict to the state thus results in no greater deterrence than awarding the entire

**35.** *Fein v. Permanente Med. Group,* 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d 665, 690–91 (1985) (citations omitted)(Bird, C.J., writing in a dissent that unsuccessfully advocated a tiered equal protection standard that would have required—much like Alaska's sliding-scale standard does—a substantial relation between means and ends even in low-level review).

**36.** Because punitive damages do not reflect reimbursement for injuries actually suffered by a plaintiff, I agree with the plurality opinion that the punitive damages cap is valid.

**37.** Plurality Opinion at 1058.

verdict to the plaintiff. (In fact, as discussed more fully below, the forfeiture provision results in less deterrence by discouraging future punitive damages claims.) Because the deterrent effect of punitive damages flows from taking money away from wrongdoing defendants, a statute designating who gets that money bears no logical relation to the stated goal of enhanced deterrence.

The plurality's reliance on general deterrence of public harm thus begs the key question: What legitimate objective did the legislature have for replacing the existing law, which achieved general deterrence by awarding full punitive damages to the plaintiff, with a forfeiture provision that achieved no greater deterrence but required the plaintiff to surrender half the award to the state? The plurality opinion offers no answer to this question. The legislature, however, did suggest another objective as being legitimate: Its statement of purposes in the 1997 tort reform act incorporates as a goal the need to discourage frivolous claims.[38] The state tacitly espouses this goal by citing cases from other jurisdictions that cite the discouragement of frivolous claims as a justification for similar forfeiture statutes.[39] But this goal fares even worse under scrutiny than the goal of general deterrence.

Because the state receives its fifty-percent share of punitive damages under AS 09.17.020(j) only if the jury's award of punitive damages withstands scrutiny by the trial judge and is upheld on appeal, the actual source of forfeiture under the statute will *always* consist of punitive damages that have been conclusively established to be factually and legally justified. While purporting to target frivolous and excessive claims, then, the forfeiture statute paradoxically does just the opposite: it attacks only meritorious judgments, supposedly deterring abusers of the punitive damages system solely by pun-

ishing legitimate users. As a deterrent to frivolous claims, then, this regime is worse than irrational; it is perverse.

### Alaska's Takings Clause

The apparent lack of a tenable purpose underlying the forfeiture statute feeds directly into the issue of taking. Alaska's "takings clause" prohibits the taking of private property for public purposes without fair compensation: "Private property shall not be taken or damaged for public use without just compensation." [40]

The forfeiture statute's tacit premise seems to be that the state has an automatic stake in all punitive damages awards because those awards serve the public interest. But this premise is staggeringly overbroad, for it essentially posits that plaintiffs who sue individually for punitive damages become de facto public servants who donate their efforts and half their causes of action to the state. Yet Alaska's constitution forbids state government from wielding this kind of absolute power over its citizens: whether its actions affect property in the form of land, money, a legal cause of action, or personal services, the state may not confiscate private property without notice, due process, and just compensation.[41]

And under AS 09.17.020(j), the state's fifty-percent share of a punitive damages award is undeniably somebody's property—property that the state obtains by legislative compulsion. It seems necessary to ask, then, where the legislature derives this power to authorize state confiscation of judgments awarding punitive damages in civil actions between private parties.

The plurality opinion tries to duck the issue of confiscation by proclaiming subsection .020(j) to be merely a "cap" that limits damages *"before"* they are awarded—an ap-

---

**38.** *See* ch. 26, § 1, SLA 1997.

**39.** *See, e.g., Gordon v. State,* 608 So.2d 800, 801–02 (Fla.1992)(holding that forfeiture provision "discourage[s] punitive damages claims by making them less remunerative to the claimant and the claimant's attorney").

**40.** Alaska Const. art. I, § 18.

**41.** *Cf. DeLisio v. Alaska Superior Court,* 740 P.2d 437, 442 (Alaska 1987)("Imposing ... a requirement which would demand the rendering of personal services without just compensation would in itself be an impermissible infringement of Alaska's due process clause and, thus, may not serve as the basis for avoiding the provisions of the takings clause.").

proach evidently premised on the tacit assumption that a punitive damages "cap" of this kind would raise no constitutional problems.[42] Yet the plurality's approach generates more problems than it resolves.

To begin with, it is unrealistic to characterize subsection .020(j) as a provision that simply creates a punitive damages cap. An ordinary damages "cap" merely limits a plaintiff's recovery: it neither takes from the defendant nor gives to the state, as does subsection .020(j). Moreover, in AS 09.17.020(f)—a provision that appears shortly before subsection .020(j)—the tort reform act already imposes an express cap on punitive damages;[43] to read subsection (j) as placing a second cap on top of the first cap thus carries us into a Seussian realm.[44]

And to construe subsection .020(j) as a cap that occurs before the plaintiff receives an award of damages flies in the face of the subsection's plain language. Alaska Statute 09.17.020(j) allows a forfeiture to occur only when "a person *receives* an award" and further commands that "50 percent of *the award* be deposited into the general fund."[45] By specifying the source of forfeiture as "the award" and by defining an award to be both something that "a person receives" and something that can be "deposited into the general fund," the statute's language unequivocally contemplates a transfer of funds to the state that will occur only when the defendant becomes obliged to make actual payment to the plaintiff—an event that necessarily follows entry of judgment in the plaintiff's favor.

Although these arguments identify important textual flaws in the plurality opinion's attempt to characterize subsection .020(j) as a mere damages cap, those flaws pale in comparison to the opinion's flawed premise that a cap of this kind would avoid constitutional problems. For even if we conceptualize the statutory forfeiture of punitive damages as an event that merely caps the plaintiff's recovery because it occurs before

money changes hands from the defendant to the plaintiff, the forfeiture still is a taking.

In approving the punitive damages forfeiture statute, the plurality opinion essentially adopts the state's reasoning that a jury's award of punitive damages is merely a factual finding that has no actual significance until a court order gives it legal effect.[46] This reasoning splits an award into two separate components, both of which are necessary before the award becomes binding: a finding of fact, which ordinarily falls within the province of the jury, and a formal order by the court that implements the jury's factual finding and gives it significance as a matter of law.

But this dichotomy fails to avoid the forfeiture statute's basic takings problem: while the dichotomy changes the identity of the owner whose property is taken, it does nothing to alter the fact that the statute authorizes an uncompensated state taking of private property. For if the jury's verdict is merely a factual finding that cannot by itself "vest" damages in the plaintiff, then neither can it legally "divest" the defendant of any property interest. And while courts may have authority to negate improper factual findings by declining to implement any legally impermissible aspect of a jury's verdict, they surely have no raw legal power to dispose of property without a proper factual basis—that is, when the jury returns a partly unauthorized verdict, courts have no authority to preempt the jury's factfinding role by commanding a disposition of property that the jury has neither specifically addressed nor authorized as a matter of fact in its verdict.

Nor can a punitive damages verdict in a dispute between private litigants properly be characterized as a general finding of fact that broadly authorizes a defendant's punishment—the kind of finding that might enable a judge to divest the defendant of property

**42.** Plurality Opinion at ——.

**43.** *See* AS 09.17.020(f).

**44.** *See* DR SEUSS, THE 500 HATS OF BARTHOLOMEW CUBBINS (Reissue ed., Random House 1989).

**45.** AS 09.17.020(j) (emphasis added).

**46.** *See* Plurality Opinion at 1059.

without heeding the jury's desire to award it to the plaintiff. A verdict awarding punitive damages is personalized: it is the product of a deliberative process that translates the seriousness of a particular plaintiff's injuries and the outrageousness of a specific defendant's conduct into a monetary sum that reflects the jury's felt need both to reward and to punish.

Under subsection .020(j), the jury is not asked to award anything to the state; nor does it determine how much the state might deserve. Its verdict takes money from a particular defendant and gives it to a specific plaintiff; it settles each party's private rights and responsibilities only in relation to the other's. It no more obliges the defendant to pay money to anyone but the plaintiff than it entitles the plaintiff to receive money from anyone but the defendant. And the private process that leads to this verdict requires neither participating party to surrender its rights against other parties.

It follows that if a court declines to give part of a verdict for punitive damages legal effect for extrinsic policy reasons, the unawarded part of the money must remain the defendant's. If the jury finds as a matter of fact that the plaintiff deserves a certain sum as punitive damages, a law may properly allow the court to effectuate only part of this finding. But if the verdict includes no express finding that the state deserves part of the money, there is no factual predicate that allows the court to go beyond declining to implement the impermissible part of the jury's verdict and that enables it instead to divert half the plaintiff's award to the state. Regardless of whether we conceptualize a verdict as vesting a property interest in the plaintiff or leaving it in the defendant, then, an order awarding half the verdict to the state necessarily results in an impermissible taking. After all, the state has no greater authority to summarily confiscate a defendant's money than a plaintiff's.

Neither the state nor the plurality opinion suggests a plausible way around this conceptual problem, and none is readily apparent. Indeed, AS 09.17.020(j)'s theoretical underpinnings seem impossible to square with our traditional system of justice. Alaska's courts offer a public forum for resolving a vast array of private and public disputes. Within this forum, the tort system allows individual litigants to resolve disputes involving private harms between themselves, without calling on the state to intervene on behalf of either party. Most of these private disputes raise few if any issues of substantial concern to state government. Even when these cases include claims for punitive damages, the conduct at issue typically falls below prevailing thresholds for state regulation or is subject to government regulation through separate administrative, civil, or criminal channels. For this reason, even though all awards of punitive damages involve a theoretical element of public harm and serve to protect the general welfare, few will implicate the kind of particularized governmental concerns that are needed to trigger a participatory state interest or to support a formal state claim to the proceeds at issue.

Indeed, it is precisely because our system invites individual litigants to advance the common good through private initiative that the state can have no automatic or presumptive claim to the pot when a civil judgment for punitive damages is entered between private parties. To be sure, the state does have a compelling interest in the system of punitive damages as a whole; and to that extent the legislature unquestionably has broad power to define and limit both the circumstances under which punitive damages can be awarded and the amounts of damages that can be recovered. But this systemic interest alone gives the state no legitimate stake in any part of a specific award that falls within established legal limits and issues from a lawful judicial proceeding between private litigants.

Moreover, though the legislature may have plenary authority to regulate punitive damages,[47] that authority alone cannot justify AS 09.17.020(j)'s deeply flawed summary forfeiture mechanism. While the legislature may choose to reduce or completely eliminate a plaintiff's right to collect punitive damages from a defendant through a civil proceeding,

47. *See* Plurality Opinion at 1058.

it may not exercise this zero-sum power in a one-sided manner: that is, it may not reduce the plaintiff's right to collect punitive damages without correspondingly expanding the defendant's right not to pay; it may not substitute the state for the plaintiff who recovers the verdict, while leaving intact the defendant's duty to pay. Because this effectively adds a new party to the action and creates a new right of recovery, the affected parties are entitled to notice, due process, and an opportunity to defend against the state's claim.

It seems to me, then, that AS 09.17.020(j)'s forfeiture provision necessarily takes money without just compensation. There is simply no room in between a jury's verdict for a particular plaintiff and a court's entry of judgment on that verdict where the state can receive without taking—no such thing as an immaculate reception. Either the state confiscates the defendant's money while it still belongs to the defendant or it usurps the plaintiff's cause of action by taking from the award after it vests in the plaintiff. One way or the other, the automatic forfeiture works an impermissible taking.

Because no interest asserted by the state justifies summary state forfeiture of either party's property, I would hold that AS 09.17.020(j) is invalid.[48]

I therefore dissent.

CARPENETI, Justice, dissenting in part.

I agree with Justice Bryner that the 1997 tort reform act's noneconomic damages cap and punitive damages forfeiture provisions are unconstitutional. I write separately because I would also hold that the limitations tolling procedure, as it applies to minors under eight years of age, is unconstitutional.

Alaska Statute 09.10.070(a) states the general rule that the limitations period for tort actions is two years. Alaska Statute 09.10.140 provides that this period will be tolled for minors until they reach the age of majority, which is eighteen years of age.[1] The parties dispute both the meaning and constitutionality of AS 09.10.140.

### 1. AS 09.10.140 creates two classes of child personal injury plaintiffs.

The court correctly sets out the parties' positions: The plaintiffs contend that AS 09.10.140 treats two classes of child personal injury plaintiffs differently, treating those younger than eight years of age at the time of injury less favorably than those older than eight years of age at the time of injury. The plaintiffs claim that AS 09.10.070(a) and 09.10.140(c) together provide that the younger children have until their tenth birthday to file a personal injury action, while the older children are treated more favorably, since they have until their twentieth birthday to file an action.

The state rejects this view, contending that the tolling provisions of AS 09.10.140 only apply to children under the age of eight at the time of injury. Therefore, in the state's view, children over the age of eight at the time of injury have two years after their injury in which to file suit, like all other tort plaintiffs.

I agree with the court's observation in today's opinion that

[w]hen interpreting the language of a statute, we normally give unambiguous language its plain meaning.[112] We may also rely on legislative history as a guide to interpretation, "but the 'plainer the language of a statute, the more convincing contrary legislative history must be' to interpret a statute in a contrary manner."[113][2]

---

48. See *Kirk v. Denver Publ'g Co.*, 818 P.2d 262 (Colo.1991).

1. AS 25.20.010; see also *Neary v. McDonald*, 956 P.2d 1205, 1209 n. 3 (Alaska 1998) (noting that the age of majority is eighteen years of age).

112. See *In re Johnstone*, 2 P.3d 1226, 1231 (Alaska 2000).

113. *Id.* (quoting *Ganz v. Alaska Airlines, Inc.*, 963 P.2d 1015, 1019 (Alaska 1998)).

While today's opinion nowhere explicitly says so, it flatly rejects the state's view. It

2. Opinion at 1065.

is correct to do so, because the state's interpretation is impossible to reconcile with the unambiguous language of AS 09.10.140. Alaska Statute 09.10.140 creates a tolling provision for the two-year statute of limitations in AS 09.10.070(a). Alaska Statute 09.10.140 contains a general rule and an exception. The general rule, in AS 09.10.140(a), tolls the statute of limitations for all children until they reach the age of majority, which is eighteen years of age:

> Except as provided under (c) of this section, if a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues ... under the age of majority ... the time of [the plaintiff's minority] ... is not a part of the time limit for the commencement of the action.

This general rule existed in former AS 09.10.140.[3] Chapter 26, SLA 1997 modified this tolling procedure with an exception to the general rule, now codified in AS 09.10.140(c).[4] As AS 09.10.140(a) states, the tolling for the plaintiff's minority applies "except as provided under [AS 09.10.140](c)." Alaska Statute 09.10.140(c) provides:

> In an action for personal injury of a person who was under the age of eight years at the time of the injury, the time period before the person's eighth birthday is not a part of the time limit imposed under AS 09.10.070(a) for commencing the civil action.

The unambiguous language of subsection (c) indicates that it applies to personal injury plaintiffs who were "under the age of eight years at the time of the injury," and creates a different tolling rule for these plaintiffs. For those plaintiffs under the age of eight at the time of injury, the statute of limitations is only tolled until those plaintiffs reach the age of eight. Therefore, AS 09.10.140 distinguishes between children and creates two different classes of minor personal injury plaintiffs: (i) those who were under the age of eight at the time of injury; and (ii) those who were eight years old or older at the time of injury. Children under the age of eight at the time of injury have until their tenth birthday to file suit, while children over the age of eight at the time of injury have until their twentieth birthday, subject to the statute of repose.[5]

### 2. The tolling provision in AS 09.10.140 violates equal protection.

The plaintiffs contend that AS 09.10.140 violates equal protection, because it creates two classes of child personal injury plaintiffs who are treated differently.[6]

As noted earlier in the court's opinion,[7] under our equal protection test the relative importance of the plaintiff's interest and the state's interest are weighed. If the plaintiff's interest is not very important, the state need only show that its objectives were "legitimate"; if the plaintiff's interest is important, the state must show a "compelling" state interest. If the state can meet this part of the test, to satisfy the next part the state must show the required "nexus" or "fit" between its regulations and its objectives. The required nexus depends on the importance of the plaintiff's interest, and a continuum of

---

**3.** Former AS 09.10.140 (1996) provided, in part:

> *Disabilities of minority and incompetency.* (a) If a person entitled to bring an action mentioned in this chapter is at the time the cause of action accrues ... (1) under the age of majority ... the time of [the] disability [of minority] is not a part of the time limit for the commencement of the action.

**4.** Ch. 26, § 8, SLA 1997.

**5.** Since AS 09.10.140(c) by its own terms does not apply to minors over the age of eight at the time of injury, AS 09.10.140(a) applies and tolls the statute of limitations for those minors until the age of majority. However, the statute of repose, AS 09.10.055, also applies and imposes a ten-year limitations period. Therefore, minors injured between the ages of eight and ten would have ten years to file suit, instead of until their twentieth birthday.

**6.** The state argues that we need not reach the plaintiffs' constitutional challenge, because the plaintiffs' claim concerning AS 09.10.140 is not ripe. However, the state does not discuss the requirements for ripeness, or cite a single authority in support of this argument. Therefore, the argument is waived for lack of sufficient briefing. *See In re Dissolution of Marriage of Alaback,* 997 P.2d 1181, 1184 n. 3 (Alaska 2000) ("Points given only a cursory treatment in the argument portion of a brief will not be considered, even if developed in the reply brief.").

**7.** Opinion at 1051–1052.

possibilities exists. If the plaintiff's interest is not very important, this fit must be merely "a substantial relationship between means and ends"; however, if the plaintiff's interest is very important, the regulation must be the least restrictive means available to achieve the objective.[8]

Alaska Statute 09.10.140 clearly fails the third part of this analysis, because even if the plaintiffs' interests are unimportant, and the state's interest is compelling, there is no substantial relationship between AS 09.10.140 and the legislature's goals. The state only offers one legislative goal underlying AS 09.10.140—the state claims that the statute was enacted "to provide finality and to protect the courts and defendants from the difficulties and unfairness of litigating stale claims." But as noted earlier, AS 09.10.140 treats two classes of minors differently.

To take the most dramatic example, a personal injury plaintiff who was injured one day before her eighth birthday has only until her tenth birthday to file suit before her claim is barred; however, a plaintiff who was injured one day after her eighth birthday has ten years in which to file suit before the claim is barred, and will be able to make the decision herself. The state has not supplied any reasons for why these two classes of children should be treated differently, and a review of the legislative history reveals no discussion of any possible rationale. The required nexus does not exist here, because the differential treatment of these two groups of children has no substantial relationship to the goal of "provid[ing] finality and protect[ing] the courts and defendants from the difficulties and unfairness of litigating stale claims."

While the state is unable to justify the disparate treatment of children below eight years of age and those eight and above at the time of injury, the court purports to find a justification in the statute of repose, AS 09.10.055. But reading the statute of repose in conjunction with section .140 creates two more classes of minors: those minors who are given the opportunity to file suit themselves and those minors who must rely on a parent or guardian to take action on their claims. The court's opinion does not view this distinction among minors as problematic and finds the line drawn in subsection .140 logical: It serves to separate those children for whom the statute of repose would block the child's ability to make the decision as an adult from those who, because they were within ten years of adulthood when injured, would be able to decide for themselves.

I would find the individual injured child's interests—the interest in being able to make the decision whether to sue for oneself, as a competent adult—to be quite important. I would also find that the state has a legitimate interest in minimizing stale claims. But even assuming that the plaintiffs' interests here are unimportant, there is not a substantial relationship between the classification of children and the state's goals. The importance of being able to file suit on one's own, rather than being forced to rely on a third-party— parent or guardian—is sufficient to justify tolling AS 09.10.070's limit for children above the age of eight. While potential tortfeasors would be subject to a longer period in which they may be subject to suit for children under eight, that increased length would be, at most, eight years. There is no justification offered by the state to support this differentiation when the impact on children under the age of eight is considered. Further, the court's suggestion that the statute of repose furnishes a sufficient reason is unpersuasive.

It is unpersuasive for three reasons: First, this classification works a perverse twist. Those children who are unlikely to realize that they have a potential claim, the youngest, are those that receive the least protection of the laws. The closer a child is to reaching the age of majority, the more likely that he or she is better able to understand the basic workings of the legal system and any potential claims he or she may have. By giving these older children more time to realize their potential claims, but denying the same right to younger children, today's decision compromises the rights of younger children. At age eight, when the statute of limitations begins running under the court's

---

**8.** *Gilmore v. Alaska Workers' Comp. Bd.*, 882 P.2d 922, 926 (Alaska 1994).

view, these children will have barely graduated from their Big Wheels ™· Such a child is absolutely dependent upon a parent or guardian to protect his or her rights. Conversely, a fifteen- or sixteen-year-old, who may well have at least an inkling of the need to sue to protect one's rights, has additional years to consider the matter: the statute of limitations will not begin to run until that child's eighteenth birthday and will not expire until the twentieth. To deprive the younger children of their claims while protecting the claims of those children who are better able to understand their situation and to articulate their thoughts creates an impermissible divide within the group of injured children.

Second, today's decision utterly ignores what the law has, in other respects, historically recognized: that children, by definition, are in their formative years.[9] If any group can lay strong claim to the need for additional time to assess the effects of physical, emotional, and other types of injury, surely it is young children. Yet in consigning the youngest injured children to a two-year limitations period, the court deprives them and their parents or guardians of an important opportunity to fully know the extent of the injured children's injuries.

Finally, in hypothesizing that the effect of the statute of repose provides a justification for the disparate treatment of injured children, the court ignores that the statute of repose treats other persons under disability differently than it treats children. Alaska Statute 09.10.140(a) tolls the statute of limitations for both the disability of mental incompetence and the disability of minority. But the statute of repose, AS 09.10.055, provides only that the statute applies "[n]otwithstanding the disability of *minority* described under AS 09.10.140(a),"[10] making no mention of the disability of mental incompetence. No reason appears why those people suffering from a mental disability are not subject to the same statute of repose as children under

the age of eight are. This failure is especially anomalous given that there is a definite time at which children will be relieved of their disability whereas those suffering from incompetency may never be relieved of their disability. In these circumstances, the court's reliance on the statute of repose to justify the disparate treatment of injured children seems problematic.

For these reasons, I would find the tolling provision for children, when read in conjunction with the statute of repose, to be a deprivation of equal protection for injured children under the age of eight and, therefore, unconstitutional.

---

**9.** *Cf. State v. F.L.A.*, 608 P.2d 12, 18 (Alaska 1980) (quoting *Bellotti v. Baird*, 443 U:S. 622, 635, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979), for the proposition that, during formative years of childhood and adolescence, children often lack experience, perspective and judgment); *P.H. v.*

*State*, 504 P.2d 837, 841 (Alaska 1972) (stating that principal precept behind children's courts is that children do not have mature judgment).

**10.** AS 09.10.055(a) (emphasis added).